**In re George Allen PARKER, Debtor.**

**No. 06–61224.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 13, 2006.

Michael R. Berlon, Duluth, GA, for Debtor.

## ORDER DENYING DEBTOR'S MOTIONS TO DISMISS

MARY GRACE DIEHL, Bankruptcy Judge.

A primary purpose of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") which became effective for cases filed after October 17, 2005 was to counteract the perceived abuse of the Bankruptcy Code by debtors.[1]

---

1. "The purpose of the bill is to improve bankruptcy law and practice by restoring personal responsibility and integrity to the bankruptcy system and ensure that the system is fair for both debtors and creditors." H.R.Rep. No. 31, 109th Cong., 1st Sess., at 2 (2005), U.S.Code Cong. & Admin.News 2005, p. 88. *See also* Letter from Mitchell E. Daniels, Jr., Executive Office of the President—Office of Management and Budget, to Rep. F. James Sensenbrenner, Jr., Chair, House Judiciary Committee (August 1, 2001) (the "common sense reforms in these bills will curb many of the abuses of the current bankruptcy laws.");

This case involves the attempt by a Chapter 7 debtor to use the eligibility and automatic dismissal provisions of BAPCPA to abuse the bankruptcy system. The Court will not misconstrue these provisions so as to support Debtor's actions and therefore will DENY Debtor's Motions to Dismiss.

## I. STATEMENT OF FACTS

Counsel for George Allen Parker ("Debtor") filed a voluntary Chapter 7 petition on his behalf on Monday, February 6, 2006. The petition designated the case as an "asset" case, indicating that Debtor believed that funds would be available for distribution to his unsecured creditors. He estimated his assets at in excess of one million dollars but less than ten million dollars and he estimated his debts to between 100 and 199 creditors in the same range. The nature of his debts was said to be "Consumer/Non–Business." Debtor also stated "I/we have received approved budget and credit counseling during the 180 day period preceding the filing of this petition." With the bankruptcy petition, Debtor filed his Statement of Financial Affairs, Schedules, Form B22A and List of Creditors. The Schedules filed with the petition showed assets of $1,808,398 and liabilities of $3,970,471.62.

Question 1 on the Statement of Financial Affairs requires a debtor to "State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year." Debtor reported $52,000 for each of 2006, 2005 and 2004.[2] Debtor reports in response to Question 2 that he had no income other than what is reflected in his Question 1 response. Question 3 requires a debtor to list payments to creditors within the 90 days preceding the filing of the case. The payments listed by Debtor include ten (10) different creditors and total $290,583.49, an amount that is nearly twice Debtor's total reported income for 2004, 2005 and 2006. Question 4 asks about lawsuits within the year preceding the filing of the bankruptcy. Debtor listed 11 such suits. Question 18 a. asks for the names of businesses in which Debtor was an officer, director, partner, or managing executive or was self-employed or had a greater than five per cent ownership interest during the preceding six years. Debtor listed five such businesses: Tri–South Development Corporation, Tri South Development Properties, Inc., Parkstone Properties, Inc., Randall Parker Homes, Inc. and Timeless Architectural Homes, Inc.

Debtor's scheduled assets (Schedule C) include a home in Duluth, Georgia valued at $1,500,000, a 2003 Mercedes Benz SL500 valued at $75,000, a Fantasy Houseboat valued at $180,000, and personal property valued at $48,000. While not listed on his Schedule C, his list of secured creditors includes a number of creditors with liens on specified personalty with the denomination "Surrender." One can only assume that Debtor possessed this proper-

Press Release, White House Press Office, President Signs Bankruptcy Abuse Prevention, Consumer Protection Act (Apr. 20, 2005) available at http://www.whitehouse.gov/news/releases/2005/ 04020050420–5.html ("The Act of Congress I sign today will ... stop those who try to commit fraud ...");

**2.** Thus, even though the petition was filed on February 6, 2006, Debtor's sworn statement was that he had received $52,000 during that 37–day period.

ty at the time the petition was filed, but failed to disclose it on Schedule C. This other property includes a 2003 Infinity FX 35 ($15,000 value), a blue 2005 Hyundai Tiburon ($16,884), a red 2005 Hyundai Tiburon ($16,884), and a 2004 Mercedes Benz CL 500 ($81,960).

Schedule I (Current Income of Individual Debtor) shows monthly gross income of $4,333.33 and monthly net income of $3,084.60. Debtor's monthly expenses total $45,421.74 on Schedule J. Debtor's Statement of Intent indicates that he intends to surrender his residence and intends to reaffirm the debts on his Fantasy Houseboat and his 2003 Mercedes Benz SL500. Debtor signed the Statement of Financial Affairs and Schedules under penalty of perjury. Debtor also signed an acknowledgment that he had read and received the "Notice to Individual Consumer Debtor Under Section 342(b) of the Bankruptcy Code," which details the services available from credit counseling agencies, the various chapters of the Bankruptcy Code that are available to individual debtors and an explanation of Bankruptcy Crimes.

The Form B22A filed by Debtor is curious. Form B22A is the Statement of Current Monthly Income and Means Test Calculation which is used to determine whether a Presumption of Abuse arises under 11 U.S.C. § 707(a)(2). Although Debtor checked the box that "Presumption does not arise," the supporting information on the Form would lead to a contrary result. Debtor does not claim the Exclusion for Disabled Veterans of Part I and reports that he is above the median income for his applicable family size. To reach the conclusion that a presumption of abuse does not arise for an above-median income debtor, a calculation must be made in Part V of the form. Debtor entered "0.00" in each of the categories of allowable deductions in Part V but nonetheless concluded that a presumption did not arise. Debtor signed a separate verification under penalty of perjury with respect to the information provided in Form B22B.

Also attached to Debtor's first-day filings was a copy of a business card from Joselyn Torres, a Housing Counselor with "The Impact! Group," and a notation that this is "the counseling company Allen used." The Impact! Group and Joselyn Torres are not listed as approved credit counseling agencies by the Office of the United States Trustee for Region 21.

S. Gregory Hays was appointed as the interim Chapter 7 Trustee for Debtor ("Trustee"). The Section 341(a) meeting of creditors was scheduled for March 13, 2006. On February 10, 2006, Debtor was sent a deficiency notice from the Clerk of the Bankruptcy Court indicating that he had not filed the certificate with respect to pre-petition credit counseling required by 11 U.S.C. § 521(b) and Interim Rule 1007(b)(3), adopted by this Court in its General Order No. 1–2005. It also indicated that Debtor had not filed "(A) Copies of Pay Stubs (or other evidence of payment) Received from Any Employer within the 60 days prior to Filing or alternatively (B) a Statement Signed by Debtor Certifying That within the 60 Days Prior to Filing, Debtor Did Not Receive a Pay Stub from an Employer and Was Either Unemployed or Self-employed* Failure to file this document within 45 days after the filing of the petition will result in the automatic Dismissal of the bankruptcy case unless the Court grants an extension of the time for filing." [3]

---

**3.** As noted, this Notice was signed by the Clerk and does not track the language of 11 U.S.C. § 521(i). Indeed the language following the asterisk refers to "this document"

On February 21, 2006, Debtor Filed a Motion to Extend Time for Credit Counseling indicating that, although he had received counseling, it was not from an approved counselor. Debtor requested additional time to file his certificate. Debtor did not schedule his motion for hearing as required by the Court's rules and procedures, and the Court took no action. The Section 341(a) creditors meeting was rescheduled from March 13, 2006 until April 3, 2006 and again until April 24, 2006 when it was held and concluded. At that meeting, Debtor presented the Chapter 7 Trustee with a certificate showing that he had received the required credit briefing from an approved agency on February 27, 2006.

Prior to the Section 341 meeting, three creditors had filed Motions for Relief from Stay and Debtor, through his counsel, had consented to the relief sought. The Trustee and one creditor (Dale Goodman, the Chapter 7 Trustee for Timeless Architectural Homes, Inc.) had filed Motions for Extensions of Time to Object to Debtor's Discharge. On two different occasions, Debtor consented to the relief sought in those Motions. (Docket No. 36–April 26, 2006 and Docket No. 38–May 1, 2006).

After the 341 meeting, the Chapter 7 Trustee sought Court authority to employ counsel, and the Court approved the employment of Arnall, Golden & Gregory to represent the Trustee. (Docket Nos. 21 and 26). The Trustee then sought to employ a broker to sell the Debtor's "Fantasy Houseboat" on May 30, 2006 (Docket No. 46), and a week later filed a Motion to Approve Compromise and Settlement Between Trustee and Ironstone Bank, the lien holder on the houseboat. (Docket No. 49). Debtor did not object to either action by the Trustee.

On June 15, 2006, a Notice of Appearance was filed by Howard Rothbloom as substitute counsel for Debtor, replacing Michael Berlon, who had filed the bankruptcy petition on behalf of Debtor and who had represented Debtor to this point in the case. On that same date, Mr. Rothbloom filed on behalf of Debtor a Motion to Dismiss Case Pursuant to 11 U.S.C. § 109(h) (Docket No. 55). The following day, a Withdrawal of Docket No. 10, Debtor's Motion To Extend Time for Filing Credit Counseling was filed (Docket No. 56). The Trustee opposed the Motion to Dismiss, and the Court scheduled the matter for hearing. Debtor later filed a Motion to Dismiss Case Under Section 521(i)(2) (Docket No. 58), which was scheduled for hearing at the same time and was opposed by the Trustee. On July 3, 2006, the Trustee filed a Motion to Sell Property seeking to effectuate a sale of the Fantasy Houseboat. (Docket No. 62). No objections to the proposed sale were filed.

A hearing was held on July 25, 2006 on Debtor's Motions to Dismiss (Docket Nos. 55 and 58) and the Trustee's Motion to Sell. In attendance at the hearing were Debtor and his attorney, Howard Rothbloom, the Trustee and his attorney, Neil Gordon, Leroy Culton, the attorney for the Office of the United States Trustee, David Whitridge, attorney for Ironstone Bank, and Dale Goodman, the Chapter 7 Trustee for the estate of Timeless Architectural Homes, Inc. The Court heard argument from all parties present. At the close of

which seems to refer to the Statement by the Debtor in (B) not the "Copies of Pay Stubs." Neither Bankruptcy Code Section 521 nor the Interim Rule 1007(b)(3) makes any mention of a "Statement Signed by the Debtor Certifying That within the 60 Days Prior to Filing, Debtor Did Not Receive a Pay Stub from an Employer and Was Either Unemployed of Self-employed." Failure to file a document that is not required by the Code or Rules cannot possibly constitute grounds for dismissal of a case without court order.

the presentations, the Court made its findings and conclusions orally on the record and indicated that it would enter written findings and conclusions in aid of the appeal process if an appeal were to be taken. Debtor having advised the Court of his intention to appeal the denial of his motions to dismiss, this written Order supplements the Court's oral ruling.

## II. LEGAL DISCUSSION

### A. CREDIT COUNSELING

BAPCPA added a Section 109(h) to the Bankruptcy Code as a new eligibility requirement for individual debtors. It provides, in relevant part:

> an individual may not be a debtor under this title unless such individual has, during the 180–day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

It appears that, despite Debtor's sworn representation to the contrary in his petition, Debtor did not receive the required briefing from an "approved" agency prior to filing his petition. At the Section 341(a) meeting of creditors, however, the Trustee was provided with a certificate from an approved counseling agency that showed Debtor had received the required briefing

approximately three weeks after the petition was filed. The Court must determine whether Section 109(h) requires that the Court dismiss a case on motion by the Debtor under these circumstances.

■ First, the eligibility requirements of Section 109 are not jurisdictional. The authority of the court to enter orders in a bankruptcy case is determined by 28 U.S.C. § 1334 and 28 U.S.C. § 157. This issue of whether Section 109 eligibility is jurisdictional has arisen recently in the battle among bankruptcy courts as to whether a court that determines a debtor is ineligible should "dismiss" or "strike" the case.[4] The better view is that because the bankruptcy court retains the authority to determine the debtor's eligibility, the court must have jurisdiction over a case commenced by an ineligible debtor. Determining eligibility is certainly a matter which "arises in a case under Title 11." 28 U.S.C. § 1334(a). *Collier on Bankruptcy* states unequivocally with respect to Section 109 that "it is clear that it is not jurisdictional." 2 Alan N. Resnick and Henry J. Somer, *Collier on Bankruptcy* ¶ 109.01[2] at 109–6.2. This is consistent with what other courts have held in construing other issues under Section 109 prior to the enactment of Section 109(h). *In re Phillips*, 844 F.2d 230, 236 n. 2 (5th Cir.1988); *McCloy v. Silverthorne (In re McCloy)*, 296 F.3d 370 (5th Cir.2002); *Montgomery v. Ryan (In re Montgomery)*, 37 F.3d 413 (8th Cir.1994); *Rudd v. Laughlin*, 866 F.2d 1040 (8th Cir.1989). *But see In re Estate of Medcare HMO*, 998 F.2d 436 (7th Cir.1993).

---

**4.** Courts which have stricken the petitions of ineligible debtors include *In re Salazar*, 339 B.R. 622 (Bankr.S.D.Tex.2006), *In re Hubbard*, 333 B.R. 377 (Bankr.S.D.Tex.2005), *In re Carey*, 341 B.R. 798 (Bankr.M.D.Fla.2006); *In re Rios*, 336 B.R. 177 (Bankr.S.D.N.Y. 2005); *In re Valdez*, 335 B.R. 801 (Bankr. S.D.Fla.2005). Courts which have dismissed

petitions of ineligible debtors include *In re Seaman*, 340 B.R. 698 (Bankr.E.D.N.Y.2006), *In re Racette*, 343 B.R. 200 (Bankr.E.D.Wis. 2006); *In re Brown*, 342 B.R. 248 (Bankr. D.Md.2006), *In re Hawkins*, 340 B.R. 642 (Bankr.D.D.C.2006), *In re Tomco*, 339 B.R. 145 (Bankr.W.D.Pa.2006); *In re Ross*, 338 B.R. 134 (Bankr.N.D.Ga.2006).

The question then arises whether, given that eligibility is not jurisdictional, the requirements of Section 109(h) are waivable. The authors of *Collier on Bankruptcy* posit that it is waivable. "Because eligibility requirements are not jurisdictional, they may be waivable by the court ... and certainly should not apply if no entity moves to dismiss the case." 2 Alan N. Resnick and Henry J. Somer, *Collier on Bankruptcy* ¶ 109.09[3] at 109–60. Analytically, this must be true; if a court has jurisdiction over a case in which a debtor is ineligible and thus orders entered in the case are valid and binding, the non-jurisdictional requirement must be waivable.

In this case, the only party to raise ineligibility is Debtor himself. The United States Trustee, the Chapter 7 Trustee, and the only creditor to appear at the hearing on the motion all urge the Court not to dismiss the case. The Court must determine whether Debtor has waived any right he may have to raise the Section 109(h) issue. A waiver may be found when there is an "intentional and voluntary relinquishment of a known right." *Black's Law Dictionary*, p. 1417 (5th rev. ed.1979); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The facts of this case are replete with evidence of waiver by Debtor. The fact which most clearly supports a waiver is that Debtor filed his Motion to Extend Time For Credit Counseling (Docket No. 10) on February 21, 2006, just fifteen days after the filing of his bankruptcy petition. Debtor affirmatively sought approval from the Court for

obtaining post-petition services to comply with the credit briefing requirement. If Debtor, fully aware of the requirement for a briefing under Section 109(h) and his apparent failure to comply with the requirement, had desired to avail himself of this defect to dismiss his case, he certainly had the opportunity to do so.[5] Additional support for a waiver is found in the numerous instances in which Debtor continued to actively participate in his Chapter 7 case after he became aware of the Section 109(h) issue: negotiation and consent to Orders Granting Relief From Stay, attendance at the Section 341 meeting of creditors at which he presented the Trustee with a copy of a certificate from an approved Credit Counseling Agency and agreement to court orders granting parties an extension of time to object to his discharge. There is no indication that Debtor ever raised the issue of his eligibility in any of these matters. It is only when the Trustee was proceeding with the sale of the Fantasy Houseboat, which Debtor intended to retain and reaffirm, that Debtor hired new counsel and did an about-face as to eligibility issue. The Court finds that Debtor waived his rights to rely on his ineligibility.[6]

The Eighth Circuit confronted an analogous problem in *In re Marlar*, 432 F.3d 813 (8th Cir.2005). An involuntary bankruptcy petition was filed against an individual under 11 U.S.C. § 303(a). The debtor met the statutory definition of a farmer and was therefore a person against whom an involuntary case cannot be com-

5. Debtor's Motion was never brought on for hearing because Debtor failed to schedule the matter for hearing by the Court, as required by the Court's self calendaring procedure. However, no objection to Debtor's Motion was filed by any party in the case.

6. At least one court has found that the completion of the credit briefing post-petition is

sufficient under certain circumstances. *In re Bricksin*, 346 B.R. 497 (Bankr.N.D.Cal.2006). Another court has found that Congress gave the courts the flexibility to waive the pre-petition counseling requirement under certain circumstances. *In re Hess*, 2006 WL 2338040 (Bankr.D.Vt.2006).

menced. However, the debtor did not raise his status as a farmer for five years after the commencement of the case. In holding that the debtor waived his ineligibility as an involuntary debtor by failing to raise it as an affirmative defense, the Eighth Circuit noted the uncertainty created by a contrary holding and stated, "[We are] unconvinced that Congress created a provision in the bankruptcy code which would allow the alleged debtor to play the ultimate trump card at *any* point in the involuntary bankruptcy proceeding." Quoting *In re Frusher*, 124 B.R. 331, 334 (D.Kan.1991). *Id.* at 815. That statement applies equally to the facts of this case.

Support for denial of the Motion to Dismiss can also be found in the concept of judicial estoppel. Unlike waiver, judicial estoppel focuses on the effect of a position taken by a party to litigation. The Supreme Court recently described and applied the principles of judicial estoppel in the case of *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rules, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 228 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); ... 18 C. Wright, A. Miller, & E. Cooper, Federal Practice

and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

532 U.S. at 749, 121 S.Ct. 1808.

■ The purpose of judicial estoppel is to "protect the integrity of the judicial process." *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir.2003); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982); *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953). As an equitable doctrine, the Court must determine whether to apply it based upon the particular facts and circumstances of the case before it. However, courts have typically considered whether the positions taken are truly inconsistent, whether the party succeeded in having the court rely upon the earlier position, such that allowing the party to prevail based upon the changed position would create the perception that the court was misled, and whether an unfair benefit would be derived or an unfair detriment imposed by allowing the change of positions. *New Hampshire v. Maine*, 532 U.S. at 750–51, 121 S.Ct. 1808.

■ In this case, the application of judicial estoppel is wholly appropriate. In taking the initial position that he had complied with the requirement of Section 109(h) and seeking an extension of time to file evidence of his compliance, Debtor obtained the benefits of the automatic stay to halt no less than eleven separate lawsuits pending against him and to forestall repossession and foreclosure actions against his

real and personal property.[7] The Debtor's action also caused the Chapter 7 Trustee to take action to engage professionals, expend administrative time to investigate causes of action and to take actions to liquidate property of the estate for the benefit of unsecured creditors in the case. The Court entered a number of Orders with the consent of the Debtor based upon Debtor's implicit representation that he was eligible for bankruptcy relief. Allowing the Debtor to change his position would make a mockery of the bankruptcy process—the precise situation that the application of judicial estoppel guards against.

Debtor argues that the credit briefing requirement of BAPCPA was designed as a "consumer protection" to insure that individuals do not seek bankruptcy relief when they are uninformed about the alternatives available for repayment of their debts.[8] Debtor's current attorney argues that this Debtor was not properly advised about his options and thus this case was improvidently filed. This argument cannot prevail where this Debtor was represented by bankruptcy counsel, actually received the credit briefing on February 21, 2006, and did not file his motion to dismiss until June 15, 2006, almost four months later and at a time when the Trustee was moving to sell the principal asset that Debtor was seeking to retain—the Fantasy Houseboat. Moreover, for a debtor such as this who has substantial business litigation, in excess of $1.8 million in property and $3.9 million in debts, the notion that he is the kind of individual that Congress was seeking to provide "consumer protection" is not credible.

Debtor's Motion to Dismiss on the grounds that he is ineligible to be a debtor under Section 109(h) is denied on the grounds that Debtor waived the protections of that statute and he is judicially estopped from arguing his ineligibility at this stage of these proceedings.

### B. PAYMENT ADVICES AND AUTOMATIC DISMISSAL

■ Debtor next raises the issue that his case is subject to dismissal because he failed to comply with 11 U.S.C. § 521(a)(1)(B)(iv) because he did not file any documents which would constitute "copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor from any employer of the debtor." Debtor then argues that since no such documents were of record and since Debtor did not file a statement

---

**7.** The automatic stay is one of the principal benefits that a debtor receives from filing a bankruptcy petition. 11 U.S.C. 362(a). Despite the fact that the automatic stay terminates when a case is dismissed, creditors frequently do not distinguish between a "dismissal" and a "discharge" so that persons filing bankruptcy petitions are frequently presumed to be immune from future litigation and collection even when the case has been dismissed and not discharged.

**8.** Experience with the credit counseling requirement has been disappointing. A National Association of Consumer Bankruptcy Attorneys study found that only 3.3% of all consumers seen by the credit counseling firms as the required first stop under the new

bankruptcy law were able to utilize the debt management plans contemplated by the new law. Mortgage Servicing News Vol. 10, June 1, 2006, 2006 WLNR 9391671. One bankruptcy judge has stated, "The whole concept of compelling an individual already buried in a financial morass to undergo credit counseling [before filing for bankruptcy] . . . makes about as much sense as requiring spouses locked in a bitter divorce proceeding to attend a marriage counseling seminar before a judge can sign a decree dissolving their marriage. . . . In both cases, it is generally too late for either type of counseling to produce a beneficial result." *In re Wilson,* 346 B.R. 59, 62 (Bankr.N.D.N.Y.2006)

attesting that he had received no such documents, his case was "automatically dismissed" under Section 521(i) of the Bankruptcy Code. There are several problems with Debtor's position.

First and foremost, Section 521(a)(1)(B)(iv) only requires the filing of documents which actually exist. If a debtor did not receive payment advices or other evidence of payment from an employer, none are required to be filed. Debtors frequently are unemployed or have sources of income such as social security or disability payments which are not from an "employer." Other debtors are self-employed and do not receive "payment advices." Thus, in order to dismiss a case when there are no payment advices of record, a court must determine that such documents exist and were not filed. In this case, Debtor has not made a *prima facie* showing that payment advices even exist. First, Debtor's schedules and statements indicate that he has a number of businesses which have been the sole source of his income during the three years before his petition was filed. There is nothing to indicate that his income from these businesses took the form of wages or salaries as opposed to dividends or other loans or withdrawals which are common in closely-held businesses. The Trustee indicated that Debtor testified at the Section 341 meeting that he had no payment advices, and the Trustee submitted a form to the United States Trustee confirming that fact. While Debtor claimed at the hearing before this Court that payment advices existed, he did not have them at the hearing and had no other written documentation to confirm their existence such as a W–2 form or income tax return.[9]

Debtor's reliance on the Deficiency Notice from the Clerk is unavailing. As noted above, the purpose of the notice's direction to file a statement that payment advices do not exist is to clarify on the docket whether they do, in fact, exist. The clerk's notice, however, does not operate as a determination by the Court that a dismissal of a case is appropriate nor is it the equivalent of an Order of Dismissal.

Section 521(i) is one of the most confusing of the sections added by BAPCPA. Like many of the other provisions of BAPCPA, it was designed to prevent abuses by debtors who do not take their responsibilities seriously and fail to provide the Court and interested parties with the information necessary to administer a bankruptcy case. However, the language of the section, particularly when taken together with related sections of the Bankruptcy Code, raises more questions than it answers. The relevant language is as follows:

> (i)(1) Subject to paragraphs (2) and (4) and notwithstanding section 707(a), if an individual debtor in a voluntary case under Chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition.

It is worthwhile to note that Section 521(i) refers to the *information* required by Section (a)(1) and not to any specific documents. Moreover, Section 521(a)(1)(B) which is all of the information that Section 521 addresses with the exception of a list of creditors (which appears in Section 521(a)(1)(A)), is prefaced by the phrase "unless the court orders other-

**9.** Given the many inconsistencies on Debtor's petition, schedules and statement of affairs, a self-serving statement which contradicts prior statements by Debtor and which has no corroborating documents or other evidence is not credible.

wise." Section 521 does not set forth the time period within which the Court can "order otherwise," as BAPCPA does in numerous other sections.[10] The statute would seem to permit the Court to excuse the filing requirements in a case at any time, before or after the 45-day period, under appropriate circumstances.

■ What, then, is the meaning of "automatic dismissal?" In general, dismissal of a Chapter 7 case must occur pursuant to 11 U.S.C. § 707, which requires "notice and a hearing." It seems logical, therefore, that "automatic dismissal" would not require notice and a hearing. Rather, it is a determination that the court can make with no notice to any party in interest and no hearing of any nature. This interpretation allows the language of Section 521(i)(2) to have meaning. That section provides that, with respect to a case in which all the required information had not been filed, "any party in interest may request the court to enter an order dismissing the case." If the case had already been "automatically dismissed," this language would be mere surplusage.[11] The Court could not dismiss a case that already has been dismissed. The determination of whether a debtor has "filed all the information required under subsection (a)(1)" must be made by the judge—it is not a ministerial act. A review of the docket will not, for example, necessarily inform as to whether debtor received pay advices during the requisite period.

The Court is aware that several other bankruptcy courts have taken a more hard-line approach to the interpretation of Section 521(i). *See, e.g., In re Wilkinson,* 346 B.R. 539 (Bankr.D.Utah 2006); *In re Fawson,* 338 B.R. 505 (Bankr.D.Utah 2006); *In re Conner,* 2006 WL 1548620 (Bankr.N.D.Fla.2006); *In re Lovato,* 343 B.R. 268 (Bankr.D.N.M.2006); *In re Williams,* 339 B.R. 794 (Bankr.M.D.Fla. 2006). Although the facts in those cases may justify dismissal in order to accomplish the section's clear intent to remove protection from debtors who fail to comply with their bankruptcy duties and thereby protect the rights of creditors, the facts of this case demonstrate why the blanket application of the language is misplaced. Here, the interests of creditors and the bankruptcy estate, as represented by the United States Trustee, the Trustee and an individual creditor, are best served by the denial of Debtor's motion. The statute, as noted above, was primarily designed to prevent abuse of the bankruptcy system so that parties were not allowed to receive the benefits of bankruptcy without performing the requisite duties. However, interpreting "automatic dismissal" to mean that a case ceases to be pending by the mere passage of time without a court order of dismissal does not further the purposes of the statute and may cause chaos and confusion since there is no readily ascertainable way to determine whether or not a case has been dismissed.

The information which Section 521 requires to be filed is information which is

---

**10.** For example, Section 362(c)(3)(B) requires that the court complete a hearing within 30 days; Section 521(i)(2) requires the entry of an order dismissing a case not later than 5 days after a request; Section 362(m) requires that the court hold a hearing within 10 days after the filing and service of an objection to a certification filed under Section 362(b)(23); Section 365(d)(4)(B) requires that an order extending the time for assumption or rejec-

tion of a lease be entered prior to 120 days after the date of the order for relief.

**11.** This provision contrasts with provisions for Orders "confirming" that actions have taken place such as in 11 U.S.C. § 362(j). Congress could have provided that an order confirming dismissal be entered but instead chose to make the order an order effecting a dismissal.

normally required for a trustee to administer a bankruptcy case and for creditors to determine whether a debtor qualifies for the relief sought. It is the trustee and the creditors who are in the best position to determine whether they have sufficient information to proceed. If they do not, Section 521(i)(2) allows for an order of dismissal on an expedited basis. If a debtor inadvertently omits information, for example, failing to file one of the four payment advices received in the sixty days before filing, the trustee and creditors may consider the omission immaterial and proceed to administer the case. In such a case, Section 521 could be used to argue that an automatic dismissal had occurred even where the interests of creditors would be harmed by a dismissal. Creditors who stand to recover from the proceeds of a lawsuit brought by the trustee would find the defendant in that action raising automatic dismissal. Congress could not have intended to establish a procedure which interferes with the liquidation of an estate and the payment of creditors where the issue is not raised by creditors or their representative, the Trustee.

An "automatic dismissal" also deprives creditors of the opportunity to seek a dismissal with other conditions, such as a dismissal under Section 109(g) or Section 349(a). Each of those sections allow the court to determine that the conduct of a debtor has been such that access to the court or to the availability of a discharge of certain debts should be curtailed. In contrast, an automatic dismissal without a court order permits a debtor to return to court immediately, with the only consequence being the need to seek an extension of the automatic stay pursuant to 11 U.S.C. § 362(c)(3). Thus, a debtor facing an objection to discharge because of material omissions or errors on his schedules could defend on the ground that the case was automatically dismissed under Section 521(i) on the grounds that because of the very same material omissions, his schedules did not contain *all* the information required by Section 521(a). Having cured that problem, the debtor could simply refile and obtain a discharge. Or suppose that, several months after filing the case, the trustee discovers that the debtor made a preferential transfer to a parent or spouse 60 days before the filing of the case that was not disclosed on the petition. If automatic dismissal is required, the insider preference defendant can use Section 521(i) to require dismissal of the bankruptcy case and thereby end the trustee's preference action. The debtor can then re-file when the preference has sufficiently aged to be unavoidable. To interpret the statute in a manner that requires dismissal in this case would be to construe the statute to be at odds with its primary purpose.

Given the Court's ability under Section 521(a)(1)(B) to "order otherwise," the Court hereby determines that no further information pursuant to Section 521(a)(1)(B)(iv) needs to have been filed or to be filed in this case. Thus, the automatic dismissal provisions, to the extent that they would have otherwise been applicable, are determined to be inoperative. Debtor's Motion to Dismiss is denied on the grounds that there is no evidence that Debtor failed to comply with Section 521(a)(1)(B), and that any non-compliance is rendered moot by the Court's determination that no further information is necessary.

## III. CONCLUSION

Debtor's Motion to Dismiss pursuant to 11 U.S.C. § 109(h) is **DENIED**. Debtor's Motion to Dismiss pursuant to 11 U.S.C. § 521(i) is also **DENIED**.