**In re Elizabeth Rodriguez MENDEZ, Debtor.**

**Elizabeth Rodriguez Mendez, Appellant,**

**v.**

**James E. Salven, Chapter 7, Trustee, Appellee.**

**BAP No. EC–06–1267–DMoPa.**

**Bankruptcy No. 05–62634.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 21, 2007.

Filed March 28, 2007.

Russell M. Koch, Esq., Visalia, CA, for Appellant.

Beth Maxwell Stratton, Esq., Fresno, CA, for Trustee, Appellee.

Before: DUNN, MONTALI, and PAPPAS, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

One of the principal areas of concern among members of the bench, the bar and the public under the recently enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") is the requirement that individuals contemplating bankruptcy obtain credit counseling before they file their bankruptcy petitions. More specific is the question of whether failure to do so leaves the court without jurisdiction over the case, or if such failure is a matter of individual eligibility, subject to traditional principles of waiver and estoppel. Our disposition here represents the first reported appellate decision to answer the question. On appeal of an order denying a debtor's motion to dismiss ("Motion to Dismiss") her own case, we conclude that pre-bankruptcy credit counseling is not a jurisdictional prerequisite, and we AFFIRM.

## I.  FACTS

The debtor, Elizabeth Rodriguez Mendez ("Debtor"), commenced her chapter 7[1] case with a "bare" or skeleton petition filing on October 17, 2005. On October 26, 2005, the Debtor filed her schedules and a motion to proceed in forma pauperis. That motion was granted on October 27, 2005.

The Debtor asserts that she was induced to file her chapter 7 case by a fellow church member, John DeRosa ("DeRosa"). According to the Debtor, DeRosa told other church members that he was an attorney and advised the Debtor that filing a bankruptcy petition "would solve her debt problems." Debtor further asserts that DeRosa prepared her bankruptcy petition, forged her signature to the petition, and filed it. DeRosa is not listed as an attorney in the records of the State Bar of California.

On December 1, 2005, an order to show cause was issued and served on the Debtor

---

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated as of October 17, 2005, the effective date of most of the provisions of BAPCPA (Pub.L. 109–8, 119 Stat. 23). The Debtor's chapter 7 petition was filed on the BAPCPA effective date.

by the bankruptcy court, indicating that no certificate of credit counseling had been filed in the Debtor's case. A hearing on the order to show cause was scheduled for January 4, 2006 ("Show Cause Hearing").

The first of three § 341(a) meetings was held in the Debtor's case on December 5, 2005. The Debtor attended, accompanied by DeRosa, who identified himself as her attorney. Because the trustee ("Trustee") had not received documents required to complete his examination of the Debtor, the § 341(a) meeting was continued to January 26, 2006.

At the Show Cause Hearing on January 4, 2006, the Debtor appeared, without DeRosa, with a credit counseling certificate that she had obtained the day before from an approved credit counseling agency. At the Show Cause Hearing, the bankruptcy court advised the Debtor that if she filed her credit counseling certificate by the following day, January 5, 2006, "your case will go forward. Otherwise it will be dismissed." The Debtor filed her credit counseling certificate with the bankruptcy court the day of the Show Cause Hearing.

At the continued § 341(a) meeting on January 26, 2006 ("Second 341(a)"), the Debtor appeared, again accompanied by DeRosa. At the Second 341(a), the Debtor testified that she had reviewed and signed her bankruptcy petition and schedules and that the information included therein was true and correct to the best of her knowledge. At the Second 341(a), the Trustee asked the Debtor a number of questions about her home and her schedules. The Trustee uncovered some issues with respect to title to the Debtor's home and the exemption the Debtor claimed in her home.[2]

After their discussion, the Trustee recommended to the Debtor that she needed to "talk to a lawyer that's well-versed in bankruptcy." The Debtor expressed some frustration with the Trustee's concerns and asked, "Why am I not entitled to do bankruptcy like everyone else?" In light of the issues raised concerning the Debtor's home, the Trustee further continued the § 341(a) meeting to February 23, 2006.

On February 7, 2006, the Trustee filed an objection to the exemption claimed by the Debtor in her home ("Exemption Objection"). The hearing on the Exemption Objection was scheduled for March 8, 2006.

On February 23, 2006, the final session of the Debtor's § 341(a) meeting ("Third 341(a)") took place. The Debtor attended without DeRosa and without counsel. At the Third 341(a), the Trustee discussed with the Debtor the value of her home, the mortgage against it and his continuing concerns about the propriety of the Debtor's exemption claim for the home. The Trustee forcefully reiterated his advice to the Debtor to contact a lawyer. During the Third 341(a), the following exchange took place between the Debtor and the Trustee:

Debtor: "... So that's why I tried to do this, a 7, because that's all I could do. But you're saying that there would be an issue of me still continuing on on [sic] to get the 7?"

Trustee: "No. There's no issue about you getting a discharge. I'm not-"

Debtor: "Oh."

Trustee: "There's no issue on that. The issue is you keeping the house."

---

2. Apparently, the Debtor had transferred an interest in her home to her disabled daughter in 2003 for no consideration, and Debtor claimed a $440,000 exemption in the home, when as a disabled person herself, her maximum exemption under California law would be $150,000.

Debtor: "Oh, they won't let me keep the house?"

Trustee: "No, I'm not saying that either. What I'm saying is that you need to talk to a lawyer."

On March 7, 2006, the day before the scheduled hearing on the Exemption Objection, the Debtor filed a letter with the bankruptcy court asserting for the first time that her bankruptcy papers had been forged and requesting dismissal of her bankruptcy case. The Debtor did not appear at the hearing on the Exemption Objection, and the bankruptcy court sustained the Trustee's objection, limiting the Debtor's homestead exemption claim to $150,000. The Debtor did not appeal the bankruptcy court's order sustaining the Exemption Objection. Because the Debtor's informal motion to dismiss her case was not properly noticed and scheduled, the bankruptcy court denied it, "without prejudice to a properly noticed hearing on a motion to dismiss."

On May 5, 2006, the Debtor filed the Motion to Dismiss through counsel. The hearing on the Motion to Dismiss was held on May 17, 2006, at which time the bankruptcy court heard testimony from the Debtor and the Trustee, and took the matter under advisement. The bankruptcy court issued its Findings and Conclusions and entered an order denying the Motion to Dismiss on July 17, 2006. Debtor filed a timely notice of appeal on July 27, 2006.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(A) and (O). We have jurisdiction pursuant to 28 U.S.C. § 158.

## III. ISSUES

(1) Whether the bankruptcy court erred as a matter of law in denying Debtor's Motion to Dismiss, because the Debtor did not obtain pre-bankruptcy credit counseling as required by § 109(h).

(2) Whether the bankruptcy court erred in denying the Debtor's Motion to Dismiss, when the Debtor presented evidence that signatures on her bankruptcy papers, including the petition, were forged, she had not intended to file bankruptcy, and she did not wish to remain in bankruptcy.

## IV. STANDARDS OF REVIEW

We review issues of statutory construction and conclusions of law, including interpretation of provisions of the Bankruptcy Code, de novo. *Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.)*, 319 F.3d 1166, 1170 (9th Cir.2003).

We review the bankruptcy court's factual findings for clear error. Rule 8013. A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

We review the bankruptcy court's decision whether or not to dismiss a chapter 7 case for "cause" for abuse of discretion. *Sherman v. SEC (In re Sherman)*, 441 F.3d 794, 813 (9th Cir.2006). "A bankruptcy court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law. The panel also finds an abuse of discretion if it has a definite and firm conviction the court below committed a clear error of judgment in the conclusion it reached." *Lopez v. Specialty Rest. Corp. (In re Lopez)*, 283 B.R. 22, 26 (9th Cir. BAP 2002)(quoting *Palm v. Klapperman (In re Cady)*, 266 B.R. 172, 178 (9th Cir. BAP 2001)).

## V. DISCUSSION

A. *The Bankruptcy Court Did Not Err in Declining to Dismiss the Debtor's Chapter 7 Case for Failure to Comply Timely With the Credit Counseling Requirements of § 109(h).*

The record in this case reflects that the Debtor is a person with debt problems who took advice to seek a solution to her financial difficulties through a chapter 7 bankruptcy. Once in bankruptcy, when she found that a consequence of her filing might be the sale of her home, she wanted out.

The new wrinkle to this commonly encountered scenario is the Debtor's attempt to use the BAPCPA credit counseling requirement offensively, as a ticket to get out of bankruptcy.

The new § 109(h) requires, as a condition to eligibility for bankruptcy relief, that within 180 days prior to an individual debtor's bankruptcy filing, the debtor receive (1) a briefing as to available opportunities for credit counseling, and (2) assistance in performing a budget analysis from a nonprofit credit counseling agency, approved ordinarily by the United States Trustee (collectively, "credit counseling").[3] The purpose of these provisions is to require debtors at least to explore the utility of credit counseling as an option before throwing in the towel and seeking a discharge of their debts in bankruptcy.[4]

If a debtor faces "exigent circumstances," under § 109(h)(3), the debtor can obtain a postpetition extension of the period to receive credit counseling of up to thirty days, based upon a certification "satisfactory to the court," that the debtor requested, but could not obtain, the required credit counseling services "during the 5–day period beginning on the date on which the debtor made that request." *See e.g., In re Romero*, 349 B.R. 616 (Bankr. N.D.Cal.2006); *In re Henderson* 339 B.R. 34 (Bankr.E.D.N.Y.2006); *In re Childs*, 335 B.R. 623 (Bankr.D.Md.2005). For "cause" shown, the debtor can obtain up to an additional fifteen days postpetition to receive the required credit counseling. *See, e.g., In re Vollmer*, 2007 WL 541747 (Bankr.E.D.Va. February 16, 2007); *In re Miller*, 336 B.R. 232 (Bankr.W.D.Pa.2006); *In re Williams*, 2005 WL 3752226 (Bankr. E.D.Ark. December 1, 2005).

In this case, the Debtor did not receive the required credit counseling prior to her chapter 7 petition being filed. There further is no evidence in the record that the Debtor requested a postpetition extension to receive credit counseling. In fact, the box to request a waiver or extension of time to satisfy the credit counseling requirement on the Debtor's bankruptcy petition is not checked. On December 1, 2005, the bankruptcy court issued its order to show cause why the case should not be dismissed for failure to satisfy the credit counseling requirement.

The Debtor did not receive the required credit counseling until one day before the Show Cause Hearing, seventy-nine days after her chapter 7 petition was filed, and

---

**3.** Section 109(h)(4) sets forth exceptions to the credit counseling requirement for debtors who are unable to complete credit counseling "because of incapacity, disability, or active military duty in a military combat zone." None of these exceptions apply in this case.

**4.** "Experience with the credit counseling requirement has been disappointing. A Na-

tional Association of Consumer Bankruptcy Attorneys study found that only 3.3% of all consumers seen by the credit counseling firms as the required first stop under the new bankruptcy law were able to utilize the debt management plans contemplated by the new law." *In re Parker*, 351 B.R. 790, 799 n. 8 (Bankr.N.D.Ga.2006).

she filed the credit counseling certificate with the court the day of the Show Cause Hearing.

Debtor asserts that the language of § 109(h) sets forth mandatory standards for eligibility for bankruptcy relief, with which the Debtor clearly did not comply. The Debtor did not obtain credit counseling during the 180–day period in advance of her bankruptcy filing, and she did not comply with the statutory requirements to obtain a postpetition extension of time to complete credit counseling. Based upon these uncontested facts, the Debtor contends that the bankruptcy court erred as a matter of law in denying the Debtor's Motion to Dismiss.

Debtor cites a number of authorities for the proposition that the credit counseling requirements of § 109(h) are mandatory and strictly construed, particularly commending to our attention the decisions in *In re Fields,* 337 B.R. 173 (Bankr. E.D.Tenn.2005), and *In re Childs,* 335 B.R. 623 (Bankr.D.Md.2005). *Fields* and *Childs* are fairly typical of decisions strictly construing the requirements of § 109(h), with the usual result being dismissal of the debtor's bankruptcy case. *See, e.g., Dixon v. LaBarge (In re Dixon),* 338 B.R. 383 (8th Cir. BAP 2006) (Debtor had ample notice of the pending foreclosure sale. Accordingly, any problem of "exigent circumstances" was of the debtor's own making, and it was not an abuse of discretion by the bankruptcy court to dismiss the case.); *In re Rodriguez,* 336 B.R. 462 (Bankr.D.Idaho 2005) (In order to obtain an extension postpetition to receive the required credit counseling, the debtor's certificate must state that the debtor requested credit counseling and that credit counseling was not available for five days.); *In re LaPorta,* 332 B.R. 879 (Bankr. D.Minn.2005) (The pro se debtor's certifi-cation was not satisfactory to the court, at least in part, because it was not signed.).

None of the authorities cited by the Debtor addresses the situation before us where the Debtor, rather than another interested party, is seeking dismissal based upon her own failure to comply strictly with the credit counseling requirements of § 109(h). However, there is at least one published decision that deals directly with this issue, albeit in a different factual setting.

In *In re Parker,* 351 B.R. 790 (Bankr. N.D.Ga.2006), the debtor, represented by counsel, filed a chapter 7 petition on February 6, 2006, stating that "I/we have received approved budget and credit counseling during the 180–day period preceding the filing of this petition." *Id.* at 793. However, the debtor did not file a credit counseling certificate with his chapter 7 petition. In his assets schedules, the debtor included a home valued at $1,500,000, a "Fantasy Houseboat" valued at $180,000, five cars, including a 2003 Mercedes valued at $75,000 and a 2004 Mercedes valued at $81,960, and other personal property valued at $48,000. *Id.* at 793–94. Apparently, the credit counseling company through which the debtor received credit counseling prepetition was not included among the credit counseling agencies approved by the United States Trustee. *Id.* at 794.

On February 10, 2006, the clerk of the bankruptcy court sent a deficiency notice to the debtor with respect to the unfiled credit counseling certificate. *Id.* On February 21, 2006, the debtor filed a Motion to Extend Time for Credit Counseling ("Extension Motion"), indicating that although the debtor had received counseling prepetition, such counseling was not received from an approved credit counseling agency, and requesting additional time to file his credit counseling certificate. *Id.* at 795. Under the bankruptcy court's local

rules, it was the debtor's obligation to schedule the Extension Motion for hearing. However, the debtor did not schedule a hearing on the Extension Motion, and the bankruptcy court took no action. *Id.* The § 341(a) meeting was rescheduled twice from March 13, 2006, ultimately to April 24, 2006, when it was held and concluded. At the final § 341(a) meeting, the debtor presented a credit counseling certificate from an approved credit counseling agency to the trustee. *Id.*

The *Parker* trustee sought to employ a broker to sell the debtor's "Fantasy Houseboat" on May 30, 2006, and further filed a Motion to Approve Compromise and Settlement Between Trustee and Ironstone Bank, the lienholder on the "Fantasy Houseboat," one week later. The debtor did not oppose either action. *Id.*

New counsel appeared for the debtor on June 15, 2006, and filed a motion to dismiss the case pursuant to § 109(h). The following day, the debtor's new counsel also filed a withdrawal of the debtor's Extension Motion. The trustee opposed the motion to dismiss, and the bankruptcy court scheduled the matter for hearing. *Id.* On July 3, 2006, the trustee filed a motion to approve a sale of the "Fantasy Houseboat." No objections were filed to the proposed sale. *Id.*

The bankruptcy court's decision sets forth a thorough analysis. It first concludes that the eligibility requirements with respect to credit counseling in § 109(h) are not jurisdictional.

> The better view is that because the bankruptcy court retains the authority to determine the debtor's eligibility, the court must have jurisdiction over a case commenced by an ineligible debtor. Determining eligibility is certainly a matter which "arises in a case under Title 11." 28 U.S.C. § 1334(a). *Collier on Bankruptcy* states unequivocally with respect to Section 109 that "it is clear that it is not jurisdictional." 2 Alan N. Resnick and Henry J. Somer, *Collier on Bankruptcy* ¶ 109.01[2] at 109–6.2. This is consistent with what other courts have held in construing other issues under Section 109 prior to the enactment of Section 109(h).

*Parker,* 351 B.R. at 796 (citations omitted). *See Duplessis v. Valenti (In re Valenti),* 310 B.R. 138, 147–48 (9th Cir. BAP 2004); *FDIC v. Wenberg (In re Wenberg),* 94 B.R. 631, 637 (9th Cir. BAP 1988)(" § 109 eligibility is not jurisdictional"), *aff'd* 902 F.2d 768 (9th Cir.1990).

The bankruptcy court then considered whether, given that the question of eligibility was not jurisdictional, the credit counseling requirements of § 109(h) could be waived. In the bankruptcy court's view, the question virtually answered itself: "[I]f a court has jurisdiction over a case in which a debtor is ineligible and thus orders entered in the case are valid and binding, the non-jurisdictional requirement must be waivable." *Id.* at 797.

This approach is consistent with the analyses of other courts that have considered § 109 eligibility issues in bankruptcy. *See, e.g., Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek Metro. Dist.),* 143 F.3d 1381, 1385 n. 2 (10th Cir.1998) (In a chapter 9 case, "none of the § 109(c) criteria is jurisdictional in nature."); *Rudd v. Laughlin,* 866 F.2d 1040 (8th Cir.1989) (The lack of debtors' eligibility for relief in chapter 13 under § 109(e) did not deprive the bankruptcy court of jurisdiction to convert the case to chapter 7 on the trustee's motion.); *Promenade Nat'l Bank v. Phillips (In re Phillips),* 844 F.2d 230, 236 n. 2 (5th Cir.1988) ("If eligibility [under § 109(g)(2)] raised an issue of subject matter jurisdiction, the parties could not expressly waive, or be held to have waived, their objections on the issue."); *Valenti,* 310 B.R. at 147–48 (§ 109(e) does not cre-

ate a jurisdictional "trump" to get around the 180–day limit in § 1330(a) on filing motions to revoke a chapter 13 plan confirmation order based on allegations that it was procured by fraud.).

It also is consistent with rulings regarding eligibility defenses to involuntary bankruptcy filings. *See, e.g., Marlar v. Williams (In re Marlar)*, 432 F.3d 813, 814–15 (8th Cir.2005) (In involuntary cases, "we hold that an alleged debtor must timely assert his or her status in one of the exempted categories as an affirmative defense. If the alleged debtor fails to timely raise the issue, it is waived."); *McCloy v. Silverthorne (In re McCloy)*, 296 F.3d 370, 375 (5th Cir.2002) ("[W]e hold that an individual's status as a farmer does not go to the jurisdiction of the bankruptcy court over an involuntary bankruptcy petition but instead is an affirmative defense that may be waived.").

It further is analogous to the result reached in *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), where the Supreme Court held that the time limits for filing a complaint objecting to the debtor's discharge under Rules 4004 and 9006 are not jurisdictional and can be waived.

Reviewing the facts in *Parker*, the bankruptcy court noted that the only party raising eligibility as an issue was the debtor himself. The United States Trustee, the trustee in the case, and the only creditor to appear at the hearing on the debtor's *motion to dismiss all opposed* the motion. 351 B.R. at 797. The bankruptcy court recognized that, "[a] waiver may be found when there is an 'intentional and voluntary relinquishment of a known right.'" *Id.* (citations omitted).

▉▉▉▉ The bankruptcy court then reviewed the facts from the record that supported a waiver by the debtor of strict compliance with the credit counseling requirements of § 109(h):

The fact which most clearly supports a waiver is that Debtor filed his [Extension Motion] on February 21, 2006, just fifteen days after the filing of his bankruptcy petition. Debtor affirmatively sought approval from the court for obtaining post-petition services to comply with the credit briefing requirement. If Debtor, fully aware of the requirement for a briefing under Section 109(h) and his apparent failure to comply with the requirement, had desired to avail himself of this defect to dismiss his case, he certainly had the opportunity to do so. Additional support for a waiver is found in the numerous instances in which Debtor continued to actively participate in his Chapter 7 case after he became aware of the Section 109(h) issue: negotiation and consent to Orders Granting Relief From Stay, attendance at the Section 341 meeting of creditors at which he presented the Trustee with a copy of a certificate from an approved Credit Counseling Agency and agreement to court orders granting parties an extension of time to object to his discharge. There is no indication that Debtor ever raised the issue of his eligibility in any of these matters. It is only when the Trustee was proceeding with the sale of the Fantasy Houseboat, which Debtor intended to retain and reaffirm, that Debtor hired new counsel and did an about-face as to the eligibility issue.

351 B.R. at 797. Based on the record, the bankruptcy court determined that the debtor had waived any § 109(h) eligibility issues as a basis for dismissing his case.[5]

Consistent with the *Parker* analysis, the bankruptcy court in this case determined that compliance with the requirements of § 109(h) was a matter of eligibility rather than jurisdiction, and consequently, was

---

5. The bankruptcy court further based its denial of the debtor's § 109(h) motion to dismiss

118

waivable. We agree with the *Parker* court's analysis, and the determination of the bankruptcy court in this case, that strict compliance with the credit counseling requirements of § 109(h) can be waived by a debtor.

■ The Trustee opposed the Motion to Dismiss, and counsel confirmed at the hearing that the United States Trustee did not intend to file a motion to dismiss the Debtor's chapter 7 case based on any failure to comply with the requirements of § 109(h).

The Debtor neither filed a credit counseling certificate with her bankruptcy petition nor checked the box in the petition to request a waiver or extension of time to comply with the credit counseling requirements of § 109(h). However, when faced with the prospect of her chapter 7 case being dismissed, following notice of the bankruptcy court's order to show cause, the Debtor received the required credit counseling from an approved credit counseling agency. The Debtor appeared personally at the Show Cause Hearing with her credit counseling certificate in hand. After she was told by the bankruptcy court that if she filed her credit counseling certificate with the court no later than the following day, her case would continue, and otherwise, it would be dismissed, she filed her credit counseling certificate with the bankruptcy court on the day of the Show Cause Hearing. That factual record provides ample evidence that the Debtor intentionally waived strict compliance with the requirements of § 109(h) and supports the bankruptcy court's ruling. Accordingly, we find that the bankruptcy court did not err as a matter of law in denying the Motion to Dismiss on § 109(h) grounds.

B. *The Bankruptcy Court Did Not Err in Denying the Motion to Dismiss Based on the Debtor's Contentions that Her Bankruptcy Papers Were Forged, She Did Not Intend to File a Bankruptcy Case, and She Does Not Want to Be in Bankruptcy.*

■ At the hearing on the Motion to Dismiss, the bankruptcy court framed the issues as:

on judicial estoppel. Application of judicial estoppel prevents a party from taking unfair advantage by asserting inconsistent positions either in the same or different legal proceedings. "The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." *Religious Tech. Ctr., Church of Scientology Int'l, Inc. v. Scott,* 869 F.2d 1306, 1311 (9th Cir.1989) (Hall, J., dissenting).

The *Parker* court opened its opinion, stating that, "[t]his case involves the attempt by a Chapter 7 debtor to use the eligibility and automatic dismissal provisions of BAPCPA to abuse the bankruptcy system." *Parker,* 351 B.R. at 792. As noted by the *Parker* court,
In taking the initial position that he had complied with the requirement of Section 109(h) and seeking an extension of time to file evidence of his compliance, Debtor ob-tained the benefits of the automatic stay to halt no less than eleven separate lawsuits pending against him and to forestall repossession and foreclosure actions against his real and personal property. The Debtor's action also caused the Chapter 7 Trustee to take action to engage professionals, expend administrative time to investigate causes of action and to take actions to liquidate property of the estate for the benefit of unsecured creditors in the case. The Court entered a number of Orders with the consent of the Debtor based upon Debtor's implicit representation that he was eligible for bankruptcy relief. Allowing the Debtor to change his position would make a mockery of the bankruptcy process—the precise situation that the application of judicial estoppel guards against.
*Id.* at 798–99. Based upon our determination that Debtor waived the § 109(h) eligibility requirement, we need not reach whether she also should be barred by the doctrine of judicial estoppel.

THE COURT: I think the issues are whether [the Debtor] really intended to file a petition in the first place, whether, as you're suggesting, she intended to file the petition and only decided not to go forward when she discovered that there was a question about her being able to retain assets.

In advance of the hearing on the Motion to Dismiss, counsel for the Debtor submitted the report of a forensic document examiner purporting to show that various signatures on the Debtor's bankruptcy papers were not hers. The report was not conclusive as to whether certain other signatures on the Debtor's bankruptcy papers were hers or not.

In addition, at the hearing, the Debtor stated, in testimony that the bankruptcy court characterized as "evasive," that she did not intend to file bankruptcy, that the signatures on her bankruptcy papers were forged, that she thought her credit counseling certificate was "a paper for filing fees," that she never took a credit counseling course, that she "didn't file for bankruptcy," and that she did not receive the notice of commencement of her bankruptcy case.

In contrast, the record reflects that the Debtor appeared at all three sessions of her § 341(a) meeting. At the Second 341(a), the Debtor testified that she had reviewed and signed her bankruptcy petition and schedules and that the information included therein was true and correct to the best of her knowledge. She also questioned during the course of her discussions with the Trustee, "Why am I not entitled to do bankruptcy like everyone else?" At the Third 341(a), the Debtor stated, "... So that's why I tried to do this, a 7, because that's all I could do."

In response to the bankruptcy court's order to show cause, the Debtor received credit counseling from an approved credit counseling agency and brought her credit counseling certificate to the Show Cause Hearing. When the bankruptcy court informed her at the Show Cause Hearing that her bankruptcy case would go forward if she filed her credit counseling certificate but otherwise would be dismissed, the Debtor filed her credit counseling certificate with the bankruptcy court on the day of the Show Cause Hearing.

The bankruptcy court considered the Motion to Dismiss as primarily turning on the question of the Debtor's intent. Based on the foregoing canvas of the record, the bankruptcy court's determination that the Debtor was not misled in *filing* her chapter 7 petition is not clearly erroneous.

> At each successive meeting of creditors, [the Debtor's] testimony shows that she understood she had filed a bankruptcy case and that she had no inclination to dismiss the case. She only decided to dismiss the case when the trustee objected to her homestead exemption.

While strategically avoiding the implications of other evidence of the Debtor's intent in the record, the Debtor, in her brief, argues that there is no evidence that the Debtor gave *written* consent to authorize the filing of a bankruptcy petition in her behalf, and accordingly, the Debtor's bankruptcy case must be dismissed. Debtor cites *In re Curtis*, 262 B.R. 619 (Bankr.D.Vt.2001), as authority.

In the *Curtis* case, a chapter 7 bankruptcy petition was filed in behalf of the debtor by his daughter, as the holder of a general power of attorney in his behalf. The debtor did not attend the § 341(a) meeting, which was attended by his daughter, again in his behalf. The debtor filed a motion to dismiss that was granted by the bankruptcy court in a narrow holding, because the "general language of the subject Power of Attorney, although requiring a

liberal construction, does not authorize the filing of a bankruptcy case." *Id.* at 623.

The *Curtis* case is distinguishable because this case does not revolve around the limited issue of interpretation of the authority granted by a power of attorney. Rather, as correctly perceived by the bankruptcy court, the real question in this case is whether the Debtor intended to file for protection under chapter 7 of the Bankruptcy Code in light of evidence in the record that at least some of the signatures on her bankruptcy papers were forged. Based upon our review of the record, the bankruptcy court's denial of the Motion to Dismiss based upon the evidence before it was not clearly erroneous.

The bankruptcy court pointed out that under § 707(a), a bankruptcy court may dismiss a chapter 7 case for cause shown, but the Debtor does not have an absolute right to have her chapter 7 case dismissed.

> Section 707(a) vests the court with the authority to decide whether a case should be dismissed. But that authority is severely circumscribed by the two mandatory conditions of section 707(a): Dismissal may occur only after notice and a hearing; and [d]ismissal may be *"only* for cause" (emphasis supplied).

6 *Collier on Bankruptcy* ¶ 707.01, p. 707-11 (15th ed. rev.2006). *See also Sherman,* 441 F.3d at 813.

The bankruptcy court balanced the interests of the Debtor and creditors in this case. The bankruptcy court considered

the Trustee's argument that creditors would be prejudiced by a dismissal in light of the fact that the Debtor's home could be sold, with creditors potentially being paid in full, and the Debtor receiving the full amount of her $150,000 homestead exemption. Based on the record, the bankruptcy court determined that the Debtor had not met her burden to establish cause to dismiss, and we find no abuse of discretion in the bankruptcy court's decision.[6]

### VI.  CONCLUSION

We AFFIRM.

---

**6.** Although we are affirming the bankruptcy court's decision on the Motion to Dismiss, we want to emphasize that this is not a zero sum game: Denial of dismissal does not automatically equate with the Debtor losing her home.

As the Trustee commendably pointed out to the Debtor at the Second 341(a) and again, at the Third 341(a), there may be options to resolve the Debtor's financial problems, allowing for payment of creditors' claims, with the Debtor retaining her home, in chapter 13. While the Debtor's eligibility to convert her case to chapter 13 is not before us, nothing in the record suggests she might be disqualified by bad faith from doing so. *See Marrama v. Citizens Bank of Mass.,* — U.S. —, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). The Debtor will be able to explore those options, if she chooses, in further proceedings before the bankruptcy court.