In re Regina Anquionette
SPENCER, Debtor.

No. 06–00314.

United States Bankruptcy Court,
District of Columbia.

May 13, 2008.

Regina Anquionette Spencer, Washington, DC, pro se.

### AMENDED MEMORANDUM DECISION RE EFFECTIVE DATE OF DISMISSAL OF CASE

S. MARTIN TEEL, JR., Bankruptcy Judge.

The court entered an earlier order granting the United States Trustee's motion under § 521(i)(2) of the Bankruptcy Code (11 U.S.C.) to dismiss the case on the basis of 11 U.S.C. § 521(i)(1). The order, however, left open the issue of the date on which the dismissal should be. made effective. *In re Spencer*, 2006 WL 3820702 (Bankr.D.D.C. Dec.22, 2006).

I

Section 521(i)(1) provides:

Subject to paragraphs (2) and (4) and notwithstanding section 707(a), if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition.

Section 521(i)(2) (to which § 521(i)(1) is expressly made subject) provides:

Subject to paragraph (4) and with respect to a case described in paragraph (1), any party in interest may request the court to enter an order dismissing the case. If requested, the court shall enter an order of dismissal not later than 5 days after such request.

Section 521(i)(3) (to which § 521(i)(1), through apparent drafting error, is not expressly made subject, but to which § 521(i)(1) plainly is subject) and § 521(i)(4) (to which § 521(i)(1) is expressly made subject) provide:

(3) Subject to paragraph (4) and upon request of the debtor made within 45 days after the date of the filing of the petition described in paragraph (1), the court may allow the debtor an additional period of not to exceed 45 days to file the information required under subsection (a)(1) if the court finds justification for extending the period for the filing.

(4) Notwithstanding any other provision of this subsection, on the motion of the trustee filed before the expiration of the applicable period of time specified in paragraph (1), (2), or (3), and after notice and a hearing, the court may decline to dismiss the case if the court finds that the debtor attempted in good faith to file all the information required by subsection (a)(1)(B)(iv) and that the best interests of creditors would be served by administration of the case.

The debtor did not timely move under § 521(i)(3) to enlarge the 45–day deadline of § 521(i)(1). After the United States Trustee moved for dismissal of the case, the chapter 7 trustee failed to move in a timely manner under § 521(i)(4) for a determination that the grounds specified by § 521(i)(4) required that the case ought not be dismissed. Dismissal was mandatory once it was determined that not all of the documents required by § 521(a)(1) had been filed by the 45–day deadline.[1] Accordingly, I issued an order dismissing the case, but I deferred ruling on when dismissal was to be treated as having occurred, and invited the views of interested parties regarding the issue. The United States Trustee and Cynthia A. Niklas, the standing chapter 13 trustee for this district, filed responses regarding the issue.

## II

■ Section 521(i) addresses the consequences of a failure of an individual debtor to file the papers required by 11 U.S.C. § 521(a)(1) within the 45–day period after the date of his filing of a petition commencing a case under chapter 7 or 13 of the Bankruptcy Code. Specifically, § 521(i)(1) directs that if the 45–day period

---

1. I need not address whether the court, on its own initiative under 11 U.S.C. § 105(a), may direct the parties to show cause why the case ought not be dismissed by reason of § 521(i)(1). *Compare Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir.1993) (court on its own initiative could address whether a Chapter 11 case should be dismissed under 11 U.S.C. § 1112(b) even though that provision only mentions dismissal "on request of a party in interest") *with In re Jackson*, 348 B.R. 487 (Bankr.S.D.Iowa 2006) (court may not dismiss a case *sua sponte* based on § 521(i)(1)). Resolution of that issue ought not affect how § 521(i) is interpreted with respect to the issue before the court, which only arises when dismissal actually occurs.

has not been enlarged under § 521(i)(3), and if the debtor has failed to comply with § 521(a)(1) at the end of day 45 of the case, then "[s]ubject to paragraphs (2) and (4) . . . , the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition."

The command of § 521(i)(1) does not mean that when § 521(i)(1) is triggered, the case **stands** automatically dismissed as of the 46th day, for the command is expressly made subject to, and its meaning clarified by, a procedure under § 521(i)(2) which requires that not later than 5 days after a party in interest requests the entry of an order dismissing a case described in § 521(i)(1), the court shall enter "an order dismissing the case," [2] (not an order, analogous to one under 11 U.S.C. § 362(j), confirming that the case was already dismissed).[3] Moreover, § 521(i)(4)—permitting a trustee to file a motion within the 5–day period of § 521(i)(2) to have the court "decline to dismiss the case"—would be internally inconsistent with § 521(i)(1) if under § 521(i)(1) dismissal already occurred on day 46.[4]

"Statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). A court must "follow the cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citations omitted).[5] It is thus necessary to interpret 521(i)(1) in light of other provisions of the Bankruptcy Code,

---

**2.** As stated in *In re Parker,* 351 B.R. 790, 801 (Bankr.N.D.Ga.2006), "[i]f the case had already been 'automatically dismissed,' this language would be mere surplusage." Moreover, the phrase "subject to" means that § 521(i)(2) is a limitation on § 521(i)(1), and that dismissal by reason of § 521(i)(1) is not to occur except pursuant to the procedures set forth in § 521(i)(2). *See In re Jackson,* 348 B.R. 487, 498 n. 25 (Bankr.S.D.Iowa 2006). Due to the "subject to" language of § 521(i)(1), a case is not dismissed under § 521(i) unless and until a party in interest moves for dismissal under § 521(i)(2). *Id.* at 497–98.

**3.** Both § 362(j) and § 521(i) were added to the Bankruptcy Code by the same statute, thus reinforcing the conclusion that Congress did not intend that the § 521(i)(2) order of dismissal would merely confirm that the case was already dismissed.

**4.** A party's right under § 521(i)(2) to obtain an order dismissing the case is expressly made subject to § 521(i)(4). In turn, § 521(i)(4) provides that notwithstanding § 521(i)(1), in certain circumstances the court may decline to dismiss the case "on the motion of the trustee filed **before the expiration of the applicable period of time specified in paragraph (1), (2),** or **(3)** . . . ." (Emphasis

added.) The 5–day time period specified in § 521(i)(2) for the court to enter an order dismissing the case is thus a window of opportunity for a trustee to file a timely motion under § 521(i)(4). If the case already stood dismissed as of the 46th day, and a request for entry of an order of dismissal under § 521(i)(2) is then filed, the trustee's purported right under § 521(i)(4) to file a motion requesting that the court decline to dismiss the case during the period set forth in § 521(i)(2) would be rendered meaningless. *See CFCU Community Credit Union v. Swimelar,* 2008 WL 189929 (N.D.N.Y. Jan.18, 2008).

**5.** To illustrate its point, the Court in *King,* 502 U.S. at 221, 112 S.Ct. 570, quoted with approval the following passage from *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2d Cir. 1941)(L.Hand, J.):

> Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used. . . .

A court "should adopt that sense of words which best harmonizes with context and promotes [the] policy and objectives of [the] legislature." *King,* 502 U.S. at 221 n. 10, 112 S.Ct. 570.

and to strive for an interpretation of § 521(i)(1) whose effects are compatible with the Bankruptcy Code as a whole. *See Timbers of Inwood Forest*, 484 U.S. at 371, 108 S.Ct. 626. Moreover, a statutory provision ought not be interpreted in a fashion that eviscerates or renders mere surplusage another provision of the same statute. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (statute will not be held to destroy itself); *Dunn v. CFTC*, 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997) (courts should avoid interpretation of a provision that renders another provision mere surplusage); *Ratzlaf v. United States*, 510 U.S. 135, 140–141, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (same).

Because § 521(i)(1) cannot be construed in isolation without considering § 521(i)(2) and (4), the language in § 521(i)(1) that "the case shall be automatically dismissed" is susceptible of being interpreted as meaning that the court has no discretion not to dismiss the case, and the language "effective on the 46th day" simply marks the date on which the court is deprived of such discretion. Dismissal at the point of day 46 of the case is automatically required, with an order of dismissal to be entered under § 521(i)(2) within 5 days of a request being made for dismissal based on § 521(i)(1) having been triggered. If the statute contemplated that the case is to stand automatically dismissed effective upon § 521(i)(1) being triggered on the 46th day, no order of dismissal would be necessary. A case does not stand dismissed unless and until the order of dismissal contemplated by § 521(i)(2) is entered, and the date of entry of the order of dismissal is the date on which the case is dismissed.

## III

Even when read in isolation from the provisions in the companion paragraphs of § 521(i) to which it is made subject, the command in § 521(i)(1) that "the case shall be automatically dismissed" can, for additional reasons, reasonably be read as meaning that dismissal is automatic in the sense that no showing of cause is required and the court no longer has discretion to deny dismissal if the debtor failed to satisfy the filing requirements of § 521(a)(1). When the language "shall be automatically dismissed" is thus understood as a directive to the court requiring that the court dismiss the case without any concomitant showing of cause, the following clause "effective on the 46th day after the date of the filing of the petition" is most naturally understood as setting the point in time at which the court becomes subject to that directive, and the debtor is deprived of any right to show cause why the case ought not be dismissed. Thus, the 46th day is not the date on which the dismissal itself is effective, but rather, the date effective as of which the court is divested of the discretion to deny a request for dismissal. Three principal reasons support that reading of the statute.

### A.

When a statute, rule, or court order intends that a case is to stand automatically dismissed without the necessity of a court order upon an event occurring, language is used making that clear. *See Swint v. Smith*, 219 Ga. 532, 134 S.E.2d 595, 596 (1964) (discussing state statute which provided that "any suit filed in any of the courts of this State in which no written order is taken for a period of five years the same **shall automatically stand dismissed** ....") (emphasis added); *Clark v. Ganson*, 144 Ga. 544, 87 S.E. 670, 670 (1916) (holding that "where the order sustaining the demurrer allowed a definite time within which an amendment might be filed, and provided that, if no such amend-

ment was filed within the time allowed, **'the suit to stand dismissed,'** if no amendment was filed, the suit was automatically dismissed.") (emphasis added); Fed. R.Civ.P. 41(a) (providing in Rule 41(a)(1), at the time of enactment of § 521(i), that a civil action "may be dismissed by the plaintiff **without order of court** (i) by filing a notice of dismissal [by a specified deadline], or (ii) by filing a stipulation of dismissal . . . ." (emphasis added)).

In comparison to such clear statutory expressions that a case stands dismissed on a specified date, § 521(i)(1) does not use language that clearly would deem the case actually dismissed on the 46th day after the filing of the petition. Had Congress intended that when § 521(i)(1) is triggered, the case is actually dismissed on the 46th day, the statute could have provided that "the case is dismissed effective on the 46th day." In other provisions of the Bankruptcy Code, that is how Congress expressed the idea of an event occurring without the necessity of an order of the court. *See* 11 U.S.C. § 362(h) ("the stay . . . is terminated"); 11 U.S.C. § 365(p)(1) ("If a lease of personal property is rejected or not timely assumed by the trustee . . ., the leased property is no longer property of the estate and the stay under section 362(a) is automatically terminated."); 11 U.S.C. § 365(p)(3) (providing in relevant part that "[i]f the lease is rejected, the stay under section 362 and any stay under section 1301 is automatically terminated. . . ."); 11 U.S.C. § 521(a)(6) ("the stay . . . is terminated"); 11 U.S.C. § 551 ("Any transfer avoided under [certain sections] . . . is preserved for the benefit of the estate. . . ."). Presumably, Congress intended a different meaning when it used the words "shall be automatically dismissed" in § 521(i)(1).

### B.

One other aspect of the language of § 521(i)(1) itself strongly suggests that the phrase "automatically dismissed" must be viewed in the sense of there being no discretion not to dismiss the case upon the specified event occurring, not as meaning that the case stands dismissed upon the specified event occurring. Section 521(i)(1) overrides the requirement of showing that cause for dismissal exists, and this suggests that "automatic dismissal" under § 521(i)(1) is directed to when a court is deprived of discretion not to dismiss the case, not when the court's order dismissing the case is to be effective.

Ordinarily, dismissal of a case under chapter 7 of the Bankruptcy Code is governed by 11 U.S.C. § 707(a), which provides that the court "may dismiss a case under this chapter only after notice and a hearing **and only for cause**" (emphasis added), and § 521(i)(1) (through the clause "notwithstanding section 707(a)") expressly dispenses with the strictures of § 707(a) and the requirement of a showing of cause. This reinforces the view that § 521(i)(1) deals with depriving the court, after day 45 of the case, of any discretion not to dismiss the case.

Similarly, dismissal of a case under chapter 13 of the Bankruptcy Code (the other type of case to which § 521(i) is applicable) is generally governed by 11 U.S.C. § 1307(c), which requires notice and a hearing, and a showing of cause. When the circumstances specified by § 521(i)(1) exist in a case, § 521(i)(1) must be viewed as a more specific statutory provision than § 1307(c) and as making dismissal mandatory notwithstanding § 1307(c) (even though § 1307(c) is not expressly mentioned in § 521(i)(1)).[6]

6. Although 11 U.S.C. § 1307(c)(9) provides    that only the United States Trustee may re-

## C.

In a chapter 13 case, "[t]he provisions of a confirmed plan bind the debtor and each creditor...." 11 U.S.C. § 1327(a). If § 521(i)(1) were triggered in the case, but no one sought an order of dismissal under § 521(i)(2) until after a plan was confirmed, the confirmed plan, by reason of § 1327(a), would bar any challenge based on § 521(i)(1) to the rights of the parties under that plan, and the case would be treated as pending despite the phrase "automatically dismissed" contained in § 521(i)(1). In other words, the case would not have stood dismissed on day 46 by virtue of § 521(i)(1), and it would have been necessary for someone to have obtained an order of dismissal under § 521(i)(2) if confirmation of the plan was to be defeated by reason of § 521(i)(1) having been triggered.

## D.

Thus, when dismissal is sought pursuant to § 521(i)(2) on the ground that § 521(i)(1) has been triggered, the phrase "automatically dismissed" in § 521(i)(1) only means that the debtor is not permitted to defeat the motion by arguing that the failure timely to file the documents required by § 521(a)(1) constitutes insufficient cause for dismissal. It is in the sense of there being no requirement for a showing of cause, that, as stated by § 521(i)(1) the case "shall be automatically dismissed" when documents required by § 521(a)(1) have not been filed by day 45, and the 46th day is not the date on which the dismissal itself is effective, but rather, the date effective as of which the court is divested of the discretion to deny a request for dismissal.

## IV

■■■ A court ought not give a Bankruptcy Code provision an interpretation that would produce a result inconsistent with important principles embodied in other provisions of the Bankruptcy Code, or with significant state or federal interests. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 243–46, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (*citing Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Protection*, 474 U.S. 494, 500–502, 505, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *Kelly v. Robinson*, 479 U.S. 36, 50, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). Courts also "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Cohen v. de la Cruz*, 523 U.S. 213, 219–20, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In addition, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). A statute's seemingly plain meaning may be disregarded if literal application of the statute would lead to a result that is demonstrably at odds with

quest a dismissal for failure to file "the information required by paragraph (1) of section 521 [which was re-numbered § 521(a)(1) by a year 2005 amendment]," that would not diminish the observation that § 521(i)(1), once triggered, deprives the court, in both chapters 7 and 13, of any discretion not to dismiss the case, and that it is in this sense that § 521(i)(1) uses the term "automatically dismissed." Section 521(i)(1) and § 1307(c)(9) can be harmonized by treating § 521(i)(1) as dealing with automatic dismissals after day 45 of the case requiring no showing of cause, and treating § 1307(c)(9) as dealing with a dismissal for cause (for example, based on a failure to file schedules by day 15 of the case as required by Fed. R. Bankr.P. 1007(c)).

legislative intent. *Id.* at 571, 102 S.Ct. 3245. "In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair Enters.*, 489 U.S. at 242, 109 S.Ct. 1026 (citation omitted). Applying those doctrines of statutory construction leads to the conclusion that a § 521(i)(2) dismissal order should dismiss a case as of the date of the entry of the order, not retroactive to day 46 after the petition filing date. Interpreting § 521(i)(1), when triggered, as causing a case to stand dismissed on day 46 would be inconsistent with prior law under which dismissals are effective only upon entry of an order of dismissal, and would lead to results that are absurd and whose substantive effects are inconsistent with important policies embodied in § 521(i) itself and with other provisions of the Bankruptcy Code and federal law.

### A.

Creditors need certainty regarding whether a case has been dismissed, and that certainty cannot be achieved if a case dismissed by reason of § 521(i)(1) stands dismissed as of day 46 of the case instead of as of the date of entry of the order of dismissal. Section 521(i)(2) contemplates that the court must first determine that the debtor failed to comply with § 521(a)(1) before it can treat dismissal as automatically required. Pending the court's determination whether § 521(i)(1) has been triggered, there can be doubt beforehand whether the case has actually been automatically dismissed. As already noted, the court may decline to dismiss the case when a trustee successfully invokes § 521(i)(4), and there can also be uncertainty whether the debtor failed to comply with § 521(a)(1):

- If dismissal is sought because the movant contends that payment advices were not filed as required by § 521(a)(1)(B)(iv), the debtor might respond that he received no payments from an employer within the 60 days before the date of the filing of the petition, thereby giving rise to a factual dispute.

- Factual and legal issues may exist with respect to whether the debtor's debts were principally consumer debts such that he was required to file a Form 22. *See In re Reavis*, 2007 WL 2219519 (Bankr.N.D.Okla. Jul.30, 2007); *In re Adibi*, 2007 WL 1556838 (Bankr.S.D.Tex. May 24, 2007).[7]

Creditors ought not be viewed as clairvoyant regarding how a court might rule on such questions. It would be absurd if the case would stand as already dismissed prior or to the court's determining such issues.

---

7. There will be other cases in which it will be a close call whether § 521(i)(1) applies, and in which the applicability of § 521(i)(1) might escape early detection. For example, a debtor with no priority debts might neglect to check the "None" box on Schedule E ("Creditors Holding Unsecured Priority Claims"), and thus have arguably failed to comply with the requirement of filing by day 45 a schedule of such liabilities. Section 521(i)(2) has not abrogated the requirement of the filing of a motion under Fed. R. Bankr.P. 9013 and service of the motion on the trustee and the debtor under this court's Local Bankr.R. 9013–1 when an order of dismissal is sought under § 521(i)(2). *See In re Wojda*, 371 B.R. 656, 659 (Bankr.W.D.N.Y.2007) (Rule 9013 applied to require service of a motion). It is inherent in § 521(i) (and under basic concepts of due process) that the trustee and the debtor are entitled to notice so that they will have an opportunity to show that § 521(i)(1) was not triggered (that is, to show that the movant is in error in contending that documents required by § 521(a)(1) were not timely filed), and so that the trustee will have an opportunity to file a motion under § 521(i)(4), within the five-day period prescribed by § 521(i)(2), to attempt to persuade the court that it is required under § 521(i)(4) to decline to dismiss the case.

Congress did not likely intend to inflict on creditors the harms that could arise from treating § 521(i)(2) dismissals as effective retroactively to the 46th day when there was uncertainty whether § 521(i)(1) would actually be held applicable.

### B.

Adding to the absurdity of subjecting creditors to such uncertainty, there can be substantial delay before the court adjudicates that § 521(i)(1) was triggered and that the case must be dismissed. A request under § 521(i)(2) for dismissal of the case may be filed months after the 46–day mark of § 521(i)(1). *See, e.g., In re Calhoun,* 359 B.R. 738, 741 (Bankr.E.D.Mo. 2007) (case dismissed January 17, 2007, effective March 28, 2006, the 46–day mark under § 521(i)(1)); *In re Cloud,* 356 B.R. 544 (Bankr.N.D.Okla.2006) (request filed 131 days after the 46–day mark of § 521(i)(1)).[8] Moreover, a court's ruling that the debtor complied with § 521(a)(1) would be subject to appellate review, *see In re Svigel,* 2007 WL 1747117 (10th Cir. BAP June 18, 2007), so that if an appellate court reversed a ruling that there was compliance with § 521(a)(1), a judicial decree that § 521(i)(1) was triggered might come very late in the case.[9]

### C.

The commencement of a bankruptcy case places a temporary halt (through the automatic stay of 11 U.S.C. § 362(a)) on collection activity and stays the race of diligence in which creditors often engage in order to prevail in collection efforts vis-à-vis other creditors, thereby assuring equality of treatment of creditors. *See Checkers Drive–In Rests., Inc. v. Comm'r of Patents and Trademarks,* 51 F.3d 1078, 1082 (D.C.Cir.1995); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.),* 810 F.2d 270, 277 (D.C.Cir.1987); *see also In re Sherman,* 441 F.3d 794, 814 (9th Cir. 2006). The automatic stay of § 362(a) terminates at "the time the case is dismissed." 11 U.S.C. § 362(c)(2)(B). If dismissal based on § 521(i)(1) is effective only upon entry of an order of dismissal that is noticed to all creditors simultaneously, this assures that creditors can all simultaneously resume the race of diligence. If, instead, dismissal based on § 521(i)(1) were made effective on day 46 after the petition filing date, this would result in creditors being put to the burden of monitoring the case to ascertain whether the debtor failed to comply with § 521(a)(1) so that they can resume collection activity as

---

**8.** The facts of the instant case similarly illustrate the delay that may occur before an order is entered under § 521(i)(2) dismissing a case based on § 521(i)(1). The 46th day after the filing of the debtor's petition fell on October 24, 2006. The United States Trustee's motion to dismiss based on § 521(i)(1) was filed on November 28, 2006, thirty-five days later. The United States Trustee did not file a separate request to the clerk to present the motion to dismiss to the court for adjudication within five days after the filing of the motion as contemplated by § 521(i)(2). As a result, the motion was not given expedited treatment, and the court's order of dismissal was entered on December 26, 2006, sixty-three days after the 46th day after the filing of the debtor's petition.

**9.** Even with close monitoring, there would be many cases in which the issue of whether § 521(i)(1) was triggered would not be spotted until late in the case. In any event, Congress did not direct the courts to devote resources to monitoring whether a debtor has complied with § 521(i)(1), and § 521(i)(2) implies that the issue is generally to be addressed via an interested party filing a motion for entry of an order dismissing the case. This court's interpretation of the statute avoids the necessity to adopt an elaborate procedure such as the one adopted in *In re Beacher,* 358 B.R. 917 (Bankr.S.D.Tex.2007), to attempt to make clear at any early stage whether § 521(i)(1) has been triggered.

soon as possible. Subjecting creditors to that burden could not have been intended by Congress. Moreover, some creditors may be in a superior position to ascertain whether the debtor has complied with § 521(a)(1). For example, a debtor's employer-creditor will know whether the debtor received payment advices. Making the dismissal effective only upon the date of entry of the order of dismissal assures that creditors are not put to that unnecessary burden of monitoring the debtor's compliance with § 521(a)(1), and assures equality of treatment of creditors.

### D.

Furthermore, making the dismissal effective on day 46 of the case would be inconsistent with longstanding bankruptcy practice that even when it is plain that dismissal of a case is required, the automatic stay is not lifted under 11 U.S.C. § 362(c)(2)(B) unless and until the court enters an order dismissing the case. *See Fish Mkt. Nominee Corp. v. Pelofsky,* 72 F.3d 4, 6 (1st Cir.1995) ("[T]he stay under section 362(a) itself expired as soon as the judgment dismissing the chapter 11 case was entered ...." (citations omitted)). In another provision added by the statute that enacted § 521(i), Congress required that when a case is subject to mandatory dismissal by reason of the bar of 11 U.S.C. § 109(g), an order of dismissal must first be entered before the automatic stay is treated as terminated based on such required dismissal. *See* 11 U.S.C. § 362(b)(21) (providing exception to automatic stay for some creditors in such a case, but not other creditors); *In re Hawkins,* 340 B.R. 642 (Bankr.D.D.C.2006). Congress gave no indication that in enacting § 521(i)(1) pursuant to the same statute, it intended to take an approach at odds with longstanding bankruptcy practice and with the approach of § 362(b)(21) of treating a case as pending despite a provision that made the debtor ineligible to be a debtor in the bankruptcy case.

### E.

By reason of the delay that can arise before a case is dismissed pursuant to § 521(i)(2), a holding that such a dismissal is retroactive to day 46 will in some instances frustrate the protections that Congress intended to accord creditors via 11 U.S.C. §§ 362(c)(3) and 362(c)(4), provisions enacted by the same statute as enacted § 521(i). Those provisions limit the availability of the automatic stay of 11 U.S.C. § 362(a) in any case of an individual debtor under chapter 7, 11, or 13, if a case of the debtor was "pending within the preceding 1–year period but was dismissed" (§ 362(c)(3)) or two or more cases of the debtor were "pending within the previous year but were dismissed" (§ 362(c)(4)). If an order of dismissal of a case is entered under § 521(i)(2) a year after the specified day 46, but the dismissal were treated as effective retroactively to that 46th day, that would result in the case not counting for purposes of §§ 362(c)(3) and 362(c)(4) as a case that was pending within the prior one-year period. In other words, making the dismissal retroactive to day 46 after the petition filing date would rob creditors of part (or, in our example, all) of the one-year period within which a new case would trigger the protections of §§ 362(c)(3) or 362(c)(4), as the case may be. Section 521(i)(1) ought not to be interpreted in a manner that eviscerates the protections intended to be accorded creditors by §§ 362(c)(3) and 362(c)(4).

### F.

During the period between the 46–day mark of § 521(i)(1) and the date on which an order is entered under § 521(i)(2) dismissing the case, uncertainty will exist regarding the trustee's authority to retain

possession of and utilize property of the estate pursuant to 11 U.S.C. §§ 363 and 521(a)(4). For example, unless the court orders otherwise, dismissal revests in the debtor the debtor's property that had become property of the estate. 11 U.S.C. § 349(b)(3). If, when § 521(i)(1) is triggered, the dismissal is effective on day 46 after the date of the petition filing, but the trustee refuses after that date to let the debtor have access to the property because he believes that § 521(i)(1) was not triggered, is the trustee liable for damages to the debtor when the court later rules that § 521(i)(1) was indeed triggered and orders the case dismissed? Congress did not likely intend to wreak such havoc regarding the trustee's authority over assets of the estate.

### G.

Various orders may have been entered in the case after day 45 of the case and before the entry of an order of dismissal under § 521(i)(2). If the case is treated as having been dismissed effective as of the 46–day mark of § 521(i)(1), those actions may be rendered improper. As explained in *In re Adibi,* 2007 WL 1556838 at *2 (Bankr.S.D.Tex. May 24, 2007), when § 521(i) is read as requiring the dismissal to be retroactive to day 46:

> the statute [would] present[ ] dangerous ambiguities and substantial peril for debtors, for creditors, for bankruptcy trustees, and for entities who dealt with the trustees (such as purchasers of estate assets). If . . . the Court [does] not determine (early on) whether [§ 521(i)(1) was triggered], then all proceedings in the case after the 45th day [would be] subject to challenge. If . . . no one raised the question until several years into the administration of the case, and if the Court determined years later [that § 521(i)(1) was triggered] and therefore the case had been dismissed automatically by the statute several years earlier [effective on day 46], the jurisdiction of the court and all acts of administration of the estate after the 45th day would be in question.

Accordingly, if a chapter 7 trustee sold property of the estate after the 45th day, in the mistaken belief that the debtor had fully complied in a timely manner with § 521(a)(1), the sale order, entered after the case stood dismissed, would be void if dismissal under § 521(i)(2) is retroactive to day 46, and the void character of the sale might not be discovered until months later. In the meantime, the purchaser may have incurred substantial expenses relating to the property, and, in any event, would incur substantial expenses addressing the effect on his purchase of the case having stood dismissed effective on day 46 after the filing of the petition.[10] Such uncertainty and added expense regarding the effectiveness of a trustee's sale of property would only lead to a decrease in the prices parties are willing to pay trustees for estate property.[11] Congress did not likely intend to wreak such havoc.

---

**10.** There is great doubt that the purchaser could obtain an order under § 349(b)(3) directing, retroactively, that the dismissal at the specified day 46 did not re-vest the property in the debtor, and that the purchaser could obtain an order upholding the validity of the sale order (even though issued in an already dismissed case). Even if such orders could be obtained, the pursuit of entry of such orders would entail attorney fees and other expenses.

**11.** This would also be contrary to the policy of assuring the security of titles to real property. *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 544, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). To paraphrase *BFP,* 511 U.S. at 544, 114 S.Ct. 1757, the title of every piece of realty sold by a bankruptcy trustee after the 45th day after an individual debtor filed his petition would be under a cloud.

## H.

Treating the case as dismissed as of the 46–day mark of § 521(i)(1), notwithstanding that the order of dismissal under § 521(i)(2) was only entered many weeks later, would in some circumstances frustrate the intended legislative purpose of 26 U.S.C. § 6503(h), a provision that Congress plainly intended to work in a coordinated fashion with the Bankruptcy Code. Under that provision, Congress intended that the Secretary of the Treasury have at least 60 days after the automatic stay of 11 U.S.C. § 362(a) terminates under 11 U.S.C. § 362(c)(2)(B) within which to make an assessment of taxes that was not time-barred on the date of the commencement of the case. If a case described in § 521(i)(1) is treated as standing dismissed at the 46–day mark even though the order of dismissal is not entered until more than 60 days after the passage of the 46–day mark, in such cases, the Secretary would be without notice of dismissal until after the window for pursuing the assessment had closed. This is contrary to the Congressional intent to permit the Secretary 60 days within which to assess the tax, and demonstrates how an interpretation of the statute that would render all § 521(i)(2) orders effective as of day 46 is not only in tension with the Bankruptcy Code, but is at direct odds with Congressional intent as

expressed in statutes intended to work in harmony with the Bankruptcy Code.

## V

*In re Fawson*, 338 B.R. 505 (Bankr. D.Utah 2006), was the first decision that interpreted § 521(i)(1), when triggered on day 46 after the petition filing date, as resulting in any dismissal order under § 521(i)(2) being effective retroactively to that day 46. The court stated that:

> Automatic means "acting or operating in a manner essentially independent of external influence or control." Section 521(i)(1) does not contemplate any independent action by the Court or any other party—the case is merely dismissed by operation of the statute itself. There is no ambiguity.

*Id.* at 510 (footnote omitted). However, as already demonstrated, the phrase "shall be automatically dismissed" *is* ambiguous because susceptible to the different meaning ascribed to it by this court. Moreover, *Fawson* fails to address the points upon which this court relies in favor of treating the case as *not* standing dismissed on day 46 whenever § 521(i)(1) is triggered, but only once an order of dismissal is entered.[12]

Decisions of some other courts appear to have made holdings in agreement with the *Fawson* view of the statute,[13] or to have

---

**12.** The same court that decided *Fawson* later supported its interpretation of § 521(i)(1) by reasoning in *In re Wilkinson*, 346 B.R. 539, 543 n. 17 (Bankr.D.Utah 2006), that "[i]t would be patently inappropriate for this Court to assist in the prosecution of a dismissed case over which it has no jurisdiction." That observation, however, follows from the erroneous premise that when § 521(i)(1) is triggered, the case stands dismissed without the necessity of an order. Under this court's interpretation, the case does not stand dismissed, and the court necessarily has jurisdiction over the case, until an order is entered dismissing the case.

**13.** *See Warren v. Wirum*, 378 B.R. 640, 647 (N.D.Cal. Nov.14, 2007) (case stood dismissed by operation of law without necessity of order of dismissal); *In re Hall*, 368 B.R. 595, 599 n. 4 (Bankr.W.D.Tex.2007); *In re Conner*, 2006 WL 1548620 (Bankr.N.D.Fla. May 16, 2006); *In re Williams*, 339 B.R. 794 (Bankr.M.D.Fla. 2006). *See also In re Turner*, 384 B.R. 852, 2008 WL 852486 (Bankr.D.Colo. Mar.24, 2008); *In re Richardson*, 2008 WL 270263 (Bankr.E.D.Tex. Jan.30, 2008) (court entered order evidencing automatic dismissal of case); *In re Winston*, 2007 WL 2385095 (Bankr. E.D.Cal. Aug.16, 2007); *In re Reyes*, 2007 WL 338066, at *2 (Bankr.E.D.Tenn. Jan.31, 2007)

expressed in dicta agreement with that view.[14] However, those decisions have added no analysis beyond what *Fawson* articulated, and in most of those decisions there is no indication that the issue of retroactivity was addressed by the parties.

## VI

In determining when a dismissal under § 521(i)(1) should be made effective, it is unnecessary to resolve an issue upon which the courts are split regarding whether, when a debtor invokes § 521(i)(1) in bad faith in an attempt to escape unfavorable consequences of the bankruptcy case, the automatic dismissal requirement of § 521(i)(1) can be avoided by retroactively ordering that the documents required by § 521(a)(1)(B) need not be filed. Section 521(a)(1)(B) imposes its filing requirements "unless the court orders otherwise." Some courts have held that if the case does not already stand dismissed after § 521(i)(1) was triggered,

and is, instead, not dismissed until an order is entered dismissing the case, a court has authority to invoke § 521(a)(1)(B) to prevent § 521(i)(1) from being successfully invoked by a debtor to escape adverse developments in her case. *See In re Parker,* 351 B.R. at 800–02 (court directed under § 521(a)(1)(B) that certain missing documents were not required to be filed under § 521(a)(1)(B), and thereby prevented a dismissal requested by the debtor under § 521(i)(1) that would have worked a substantial injustice on creditors); *In re Jackson,* 348 B.R. at 499–500; *In re Warren,* 2007 WL 1079943 (Bankr.N.D.Cal. Apr.9, 2007), *rev'd sub nom. Warren v. Wirum,* 378 B.R. 640 (N.D.Cal.2007); *In re Withers,* 2007 WL 628078 (Bankr. N.D.Cal.2007); *In re Fileccia,* 2007 WL 1695387 (Bankr.M.D.Tenn. June 6, 2007); *In re Ackerman,* 374 B.R. 65 (Bankr. W.D.N.Y.2007).[15] Even if a dismissal under § 521(i)(1) does not occur until the entry of an order of dismissal, § 521(i)(1)

(case was automatically dismissed "by operation of law" on the specified day 46 "irrespective of whether a party in interest requested entry of an order of dismissal pursuant to § 521(i)(2)"); *In re Calhoun,* 359 B.R. 738, 741 (Bankr.E.D.Mo.2007); *In re Ott,* 343 B.R. 264, 266–67 (Bankr.D.Colo.2006) (characterizing § 521(i)(1) as "self-executing" and agreeing with *Fawson,* 338 B.R. at 510); *In re Cloud,* 356 B.R. 544, 545 (Bankr.N.D.Okla. 2006); *In re Smith,* 352 B.R. 729, 730 (Bankr. W.D.N.Y.2006); *In re Rubio,* 2006 WL 2792213 (Bankr.S.D.Tex. Sept.25, 2006).

**14.** *See In re Brickey,* 363 B.R. 59, 66 (Bankr. N.D.N.Y.2007) (court appears to assume that a § 521(i) dismissal is effective on day 46 after the filing date of the petition, but holds that under § 521(i)(4), when applicable, the court may annul that dismissal); *In re Dienberg,* 348 B.R. 482, 483 (Bankr.N.D.Ind.2006) (suggesting that an order under § 521(i)(2) is a "comfort order" doing "nothing beyond confirming a state of affairs that already exists") (footnote omitted); *In re Walker,* 2006 WL 4671832 (Bankr.D.Md. July 20, 2006); *In re Duffus,* 339 B.R. 746, 748 (Bankr.D.Or.

2006) ("Where the Congress intended that a case be dismissed automatically, and without the need for a motion, it said as much. *See* § 521(i)(1)." (footnote omitted)); *In re Muhaimin,* 343 B.R. 159, 166 (Bankr.D.Md.2006).

**15.** A court has no such express power to direct that the debtor is not required to file the list of creditors required by § 521(a)(1)(A), but as a practical matter a case in which the debtor does not file a list of creditors is dismissed well before day 46 after the petition filing date. The clerk cannot give notice of the commencement of the case and of the meeting of creditors without the list of creditors. Notice of the meeting of creditors generally must be mailed out no later than the 20-day mark of the case in chapter 7 and the 30-day mark of the case in chapter 13. *See* Fed. R. Bankr.P.2002(a)(1) (minimum number of days of notice required); *see also* Fed. R. Bankr.P.2003(a) (latest date for holding meeting of creditors). Accordingly, the court addresses a debtor's failure to file a list of creditors well prior to the 46-day mark of the case.

could be read as subject to only paragraphs (2) through (4) of § 521(i), and if the order under § 521(a)(1)(B) excusing non-filing of required documents was not entered by day 45 of the case, then such an order (because not issued pursuant to § 521(i)) might come too late to excuse the non-filing, and *Parker* and similar decisions would be incorrect.[16] I need not resolve that issue.

But if, under the other possible interpretation of § 521(i)(1), the case has already been dismissed on day 46 by virtue of § 521(i)(1) having been triggered, there would be no question that the court is precluded from retroactively excusing the non-filing, and the debtor would succeed in escaping the throes of the bankruptcy case. *See Warren v. Wirum,* 378 B.R. at 647 (because the court believed that the case already stood dismissed on day 46 pursuant to § 521(i)(1) based on the non-filing of certain payment advices required by § 521(a)(1)(B)(iv), the court concluded that it could not retroactively undo the dismissal by invoking § 521(a)(1)(B) to excuse the non-filing of the payment advices); *Rivera v. Miranda,* 376 B.R. 382, 385–86 (D.Puerto Rico 2007). Accordingly, interpreting § 521(i)(1), when triggered, as causing the case to stand dismissed on day 46 would deprive the bankruptcy court of any chance that it could invoke "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code" noted in

*Marrama v. Citizens Bank of Massachusetts,* —— U.S. ——, ——, 127 S.Ct. 1105, 1112, 166 L.Ed.2d 956 (2007). I prefer an interpretation of § 521(i)(1) that leaves open the possibility that the court might be able to prevent an abuse of the bankruptcy system, and under my interpretation of when a dismissal order under § 521(i) is effective, there is at least an argument (which I need not resolve now) that the effects of § 521(i)(1) can be avoided via a retroactive order excusing non-filing of documents required by § 521(a)(1)(B).

But all of the foregoing discussion of the *In re Parker* and *Warren v. Wirum* competing line of cases is academic. Even if § 521(i)(1), once triggered, deprives the court of discretion to prevent dismissal (by retroactively excusing non-filing of documents) in a case in which the debtor in bad faith invokes § 521(i)(1) to attempt to avoid adverse developments in the case, that still would not answer the question regarding when a dismissal on § 521(i)(1) grounds should be treated as occurring.

### VII

■ The responses filed regarding the issue either support my conclusion or fail to persuade me to a contrary conclusion. In her response, Cynthia A. Niklas, the standing chapter 13 trustee for this district, urges that dismissal under § 521(i) should not be made retroactive to the 46th day, stating:

---

**16.** Even assuming that *In re Parker* and similar decisions were properly decided, the holding of those decisions should be limited to cases of abuse. When a dismissal would not result in an abuse of the system, a denial of dismissal, once § 521(i)(1) has been triggered, properly should be confined to § 521(i)(4) which is limited to a case in which the debtor in good faith attempted to file required payment advices. In other words, it does not appear that Congress intended that a court

would excuse non-filing, once § 521(i)(1) is triggered on day 46, when the debtor is the party requesting after day 45 to be excused from filing documents required by § 521(a)(1). Granting a debtor's request to be relieved of filing requirements under § 521(a)(1) after § 521(i)(1) has been triggered would be inconsistent with this court's interpretation of § 521(i)(1), once that provision is triggered, as requiring no showing of cause to warrant dismissal of the case.

A retroactive dismissal would ... potentially create absurd results and have far ranging un[in]tended consequences. Retroactive Court Orders would bring into question the validity and the enforceability of Court orders and with it, the credibility of the Court. Retroactive Court Orders might also shorten or eliminate the requisite 180–day dismissal period with prejudice to the benefit of the debtor and to the detriment of creditors. Retroactive Court Orders would also create havoc in Chapter 13 plan distributions to creditors made pursuant to a confirmed plan, to the prejudice of creditors and with a financial windfall for debtors.

Response of Cynthia A. Niklas at ¶ 5.[17] This mirrors the observation in *In re Parker*, 351 B.R. at 801:

> The statute ... was primarily designed to prevent abuse of the bankruptcy system so that parties were not allowed to receive the benefits of bankruptcy without performing the requisite duties. However, interpreting "automatic dismissal" to mean that a case ceases to be pending by the mere passage of time without a court order of dismissal does not further the purposes of the statute and may cause chaos and confusion since there is no readily ascertainable way to determine whether or not a case has been dismissed.

The United States Trustee "submits that making the 521(i) dismissal effective as of the 46th day is the appropriate remedy in this case and that to the extent anomalies may arise in other or future cases, the court retains sufficient authority to ad-dress those situations on a case-by-case basis." Response of U.S. Trustee at 3. The United States Trustee elaborates that:

> dismissal should be made effective as of day 46, unless there is some overriding issue which the court can address at that time. As identified in *Parker*, there are tools and judicial doctrines available for the courts to prevent abuse and protect the integrity of the judicial system. In this particular case, the United States Trustee is unaware of any circumstance which should prevent a straightforward application of the statute.

Response of U.S. Trustee at 4. However, if, as the United States Trustee concedes by citing *Parker*, a court retains the power under § 521(a)(1)(B) to prevent § 521(i) from being effective even once it appears to have been triggered on the specified day 46 by reason of the debtor's failing to file one of the required documents, then parties in interest cannot know whether the case has been dismissed under § 521(i) until the court issues an order of dismissal. Congress could not have intended such uncertainty. Moreover, as demonstrated by the discussion in part IV of this decision, the untoward consequences of making the dismissal retroactive to day 46 after the petition filing date will not always be immediately known. The untoward consequences of a retroactive dismissal (what the United States Trustee calls anomalies arising from such a dismissal) are not reflected solely in the bankruptcy case docket. It is far preferable to adopt an interpretation of the statute which acts prophylactically to prevent any such anom-

---

17. In her response, the chapter 13 trustee urges that the court direct that payment advices be submitted to the case trustee and not filed with the court (because the existence *vel non* of payment advices prevents certainty in administering the requirements of § 521(i)), and that the court itself dismiss a case on the 46th day when schedules and the statement of financial affairs have not all been filed by the 45th day. Even if the court were to attempt to monitor cases for § 521(i) compliance, there would be the occasional non-compliant case that would escape detection at the 46th day.

alies from arising in the first place, and which consistently treats the dismissal date as the date of entry of the order of dismissal instead of injecting the uncertainty of treating the dismissal date as chameleon-like depending upon the unique circumstances of each case.

## VIII

An order follows deeming the dismissal to have occurred as of the date on which the court entered its order of dismissal.