# United States Court of Appeals
## For the First Circuit

No. 07-2736

In Re IVÁN ACOSTA-RIVERA AND AÑA A. BALSEIRO-CHACÓN,

Debtors,

_____

WILFREDO SEGARRA-MIRANDA, CHAPTER 7 TRUSTEE,

Appellant,

v.

IVÁN ACOSTA-RIVERA ET AL.,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

[Hon. Sara E. De Jesús, U.S. Bankruptcy Judge]

Before

Lipez, Selya, and Howard,
Circuit Judges.

Noemi Landrau Rivera and Landrau Rivera & Associates on brief
for appellant.
Iván Acosta-Rivera and Aña A. Balseiro-Chacón on brief pro se.

February 19, 2009

**SELYA**, **Circuit Judge**.  This appeal, which requires us to decide an issue of first impression at the federal appellate level, turns on the construction of a provision of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or the Act), Pub. L. 109-8, 119 Stat. 23 (2005).  Writ large, the provision in question expands the debtor's duties of financial disclosure to the extent that he or she must now file with the bankruptcy court, "unless the court orders otherwise," six traunches of financial information (including payment advices and an itemized statement of monthly net income).  11 U.S.C. § 521(a)(1)(B)(iv),(v).  The issue centers on whether the bankruptcy court may enter an order excusing non-disclosure after the time for filing the required information has expired.  The bankruptcy court thought that it had the authority to enter such an order. It proceeded to exercise that power, thus avoiding dismissal of the debtors' petition under section 521(i)(1) (BAPCPA's so-called "automatic dismissal" provision).  The district court construed the "orders otherwise" provision differently.  Consequently, it determined that the order excusing the failure to file was beyond the scope of the bankruptcy court's authority.  See Rivera v. Miranda, 376 B.R. 382, 386 (D.P.R. 2007).

We conclude that the bankruptcy court acted in consonance with the statutory scheme and within the realm of its discretion.

-2-

Accordingly, we reverse the district court's order and remand for further proceedings.

The procedural background is uncomplicated. The debtors, Iván Acosta-Rivera and Aña Balseiro-Chacón, are married to each other. They originally filed a joint Chapter 13 petition and later converted that filing to a Chapter 7 petition.[1] The debtors' estate included an unresolved employment discrimination suit brought by Acosta-Rivera against his quondam employer. In that suit, which had been pending for roughly eight years and had twice been appealed to the Supreme Court of Puerto Rico, Acosta-Rivera sought reinstatement, backpay, and compensatory damages.

At this point, the plot thickens. Although this chose in action was plainly an asset of the debtors' estate, it did not appear on their original bankruptcy schedules, their first amended schedules, or their second amended schedules.

Six months after the filing of the bankruptcy petition, the debtors revealed the existence of the chose in action, listing its value as "unknown," in their third amended set of schedules. Even then, they failed to disclose that the suit demanded pecuniary

---

[1] In brief, a Chapter 13 bankruptcy allows individuals who have a regular source of income to submit to the bankruptcy court a plan to repay all or part of their debts over a three to five year period. During the repayment period creditors are stayed from starting or continuing collection efforts. See 11 U.S.C. §§ 1321-1330. Chapter 7 is a liquidation. See 11 U.S.C. §§ 701-784. A bankruptcy trustee collects and sells the debtor's non-exempt assets and uses those proceeds to pay creditors.

relief (e.g., backpay and money damages). After several further amendments (not material here), the debtors valued the chose in action at $2,700,000 and claimed an exemption of $350,000.

Eventually, the Chapter 7 trustee moved for leave to settle the suit for $200,000 (a sum that would have generated enough cash to pay all allowed claims and produce some surplus funds for the debtors). Balking at this proposal, the debtors moved under the automatic dismissal provision, 11 U.S.C. § 521(i)(2), to confirm the dismissal of their petition. In support of their motion, they claimed not to have filed or otherwise provided the payment advices and statement of monthly net income required by BAPCPA. As their attorney acknowledged, the debtors wanted to dismiss the bankruptcy case so that they could "continue prosecuting the state court action" for damages.

We pause at this juncture to discuss the Act's "automatic dismissal" provision. When a debtor fails to file all the information required by section 521(a)(1)(B) within the prescribed period — that is, within forty-five days of the filing date of the bankruptcy petition — BAPCPA provides that "the case shall be automatically dismissed."[2]   11 U.S.C. § 521(i)(1).   The term

_____

[2] The automatic dismissal deadline can be extended by another forty-five days upon timely request. See 11 U.S.C. § 521(i)(3). Moreover, the automatic dismissal provision is subject to an explicit statutory exception: a timely motion by the trustee to forestall dismissal based on the best interests of the creditors and the debtors' good-faith efforts to effect the required filing. Id. § 521(i)(1), (4).  That exception does not apply here.

"automatic dismissal" is something of a misnomer. Typically, dismissal under this provision takes place at the instance of a "party in interest." Id. § 521(i)(2); see, e.g., In re Spencer, 388 B.R. 418, 421 (Bankr. D.D.C. 2008). Dismissal is, therefore, hardly "automatic."[3]

We return to what transpired below. In due season, the bankruptcy court denied the debtors' motion to dismiss, finding that "facts peculiar to this case do not require dismissal under section 521." In support, the court noted that the debtors' motion stemmed from their "disagreement with the proposed settlement." That was significant because the putative settlement would have satisfied all allowed claims; thus, neither the creditors nor the trustee needed the missing (undisclosed) information. Based on that reasoning, the court entered "an order nunc pro tunc . . . excusing the debtors from filing the payment advices mentioned in section 521(a)(1)(B)(iv)."[4] In short, the court excused the detailed disclosure by ordering the debtors to do "otherwise" under section 521(a)(1)(B).

---

[3] A few courts have conceptualized dismissal under this section as a matter involving only the counting of the days. See, e.g., In re Fawson, 338 B.R. 505, 510 (Bankr. D. Utah 2006). To decide this case, we need not resolve that question.

[4] Although not explicitly mentioned, the court evidently meant to excuse as well the filing of the monthly net income statement. We proceed on that assumption.

In a subsequent order, the court approved the trustee's revised recommendation to settle the discrimination case for $600,000, citing the likelihood of delay from further litigation, uncertainties surrounding collection, and the fact that Acosta-Rivera stood to receive nearly $400,000, less mortgage arrearages, after the allowed claims were paid.

The debtors appealed the denial of their motion to dismiss to the district court. The district judge ruled that the bankruptcy court lacked authority to excuse compliance with the disclosure requirement more than forty-five days after the debtors filed their bankruptcy petition. See Rivera, 376 B.R. at 386. In the judge's view, the strictures of the Act left the bankruptcy judge "with no discretion to fashion any reasonable or equitable solution." Id. at 386-87. The judge stated: "'After the expiration of the specified period set forth in 11 U.S.C. § 521(i)(1), there are no exceptions, no excuses, only dismissal and the consequences that flow therefrom.'" Id. at 386 (quoting In re Ott, 343 B.R. 264, 268 (Bankr. D. Colo. 2006)). This timely appeal followed.[5]

Some preliminary pruning is in order. The Chapter 7 trustee devotes much of his brief to General Order 05-06 of the

[5] Only the United States Trustee filed an answering brief in the district court. That court, however, designated both the United States Trustee and the Chapter 7 trustee as appellees. The Chapter 7 trustee has taken the instant appeal. We are satisfied that he has standing to do so.

bankruptcy court, which directs debtors not to file the payment advices required by section 521(a)(1)(B)(iv), but, rather, to provide them to the trustee and interested creditors. The general order further provides that "[f]ailure of debtor to comply with the requirements of 11 U.S.C. § 521(a)(1)(B)(iv)" — presumably as adjusted by the general order — "will result in automatic dismissal under section 521(i)(1)." This general order is standard fare: bankruptcy courts in numerous districts have adopted comparable orders. See In re Brickey, 363 B.R. 59, 64 & n.4 (Bankr. N.D.N.Y. 2007).

Neither the bankruptcy court nor the district court mentioned General Order 05-06. Moreover, even if the debtors had complied with this general order — a circumstance that the record does not document and that the debtors deny — the statutory issue would persist. By its terms, the general order is limited to the payment advices required by section 521(a)(1)(B)(iv); it does not mitigate the debtors' duty to file the statement of monthly net income required by section 521(a)(1)(B)(v).

The trustee has yet another new argument. For the first time, he suggests that the debtors filed the functional equivalent of a monthly net income statement in the form of Schedule J. This is too little and too late.

Schedule J deals with a debtor's current expenditures. In the process, it responds to a different filing requirement,

-7-

contained in 11 U.S.C. § 521(a)(1)(B)(ii). Although line 20 of Schedule J is called a "Statement of Monthly Net Income" and the advisory committee note to the official bankruptcy forms states that this line was added to Schedule J in 2005 "as required by § 521(a)(1)(B)(v)," there is no reason to think that Schedule J is a proxy for the statement of current monthly income required by section 521(a)(1)(B)(v). In fact, the case law suggests the opposite conclusion. See, e.g., In re Turner, 384 B.R. 852, 856 (Bankr. D. Colo. 2008) (holding that a Chapter 7 debtor's duty to file a section 521(a)(1)(B)(v) statement of monthly net income "can only be fulfilled by filing" Form B22A).

We need not probe this point too deeply. Whether Schedule J can ever serve double duty in a given case is not before us. Suffice it to say that, in this instance, we will not entertain the trustee's forfeited argument. See Teamsters Union Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not squarely raised in the lower court cannot be broached for the first time on appeal.").

Having cleared away the underbrush, what remains is the question of the bankruptcy court's authority to waive the disclosure requirement after the expiration of the filing deadline. The statute provides that the debtor "shall . . . file"

the required disclosures "unless the court orders otherwise."  11 U.S.C. § 521(a)(1)(B).  The grant of judicial power to "order[] otherwise" predated BAPCPA.[6]  In overhauling section 521, Congress left this familiar language intact.  We do not regard that as a mere fortuity.  Nor do we think that a slip of the pen accounts for the fact that the provision does not now contain an explicit deadline for ordering otherwise.  In this context, we have a high regard for congressional silence.

Sharing this regard, a few courts have held that the bankruptcy court possesses authority to waive the disclosure requirement even after the forty-five-day filing deadline has expired.  See, e.g., In re Parker, 351 B.R. 790, 801-02 (Bankr. N.D. Ga. 2006); In re Jackson, 348 B.R. 487, 499-500 (Bankr. S.D. Iowa 2006); cf. In re Bonner, 374 B.R. 62, 64-65 (Bankr. W.D.N.Y. 2007) (suggesting that "special circumstances can justify nunc pro tunc relief" under section 521(i)).  Other courts, however, have taken the view that BAPCPA's new forty-five-day deadline applies to courts and debtors alike.  See, e.g., In re Spencer, 388 B.R. at 422; Warren v. Wirum, 378 B.R. 640, 647 (N.D. Cal. 2007); In re Hall, 368 B.R. 595, 599 (Bankr. W.D. Tex. 2007); In re Brickey,

_____

[6] The pre-BAPCPA version of section 521(1) provided:

The Debtor shall . . . file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.

363 B.R. at 64-65 (Bankr. N.D.N.Y. 2007); In re Calhoun, 359 B.R. 738, 740 (Bankr. E.D. Mo. 2007). That view reads into the filing deadline a restriction on bankruptcy courts' authority gleaned by implication from the "automatic dismissal" provision.

Neither reading satisfies both head and heart in equal measure. The former (more flexible) reading honors the policy behind the Act by vesting bankruptcy courts with greater discretion to discourage bankruptcy abuse. Because any party in interest may request an order of automatic dismissal, debtors with something to hide are liable to treat dismissal as an escape hatch to be opened as needed. See Parker, 351 B.R. at 802; see also Hall, 368 B.R. at 602 (dismissing case on motion of debtor whom court describes as "the poster child for a bad faith debtor"). In such cases, the court has no occasion to address non-disclosure until long after the forty-five-day period has elapsed. That timetable rubs uneasily against the strictures of an inflexible reading — and bankruptcy courts are, after all, courts of equity.

But the story has another side. The stricter reading of the statute, though inflexible, gives sharper teeth to the automatic dismissal provision. It ensures that dismissal at a party's request is all but guaranteed once the forty-five days have passed. Given Congress's concern with "the recent escalation of consumer bankruptcy filings," H.R. Rep. No. 109-31, at 3-4, reprinted in 2005 U.S.C.C.A.N. 90, it can be argued that the

-10-

stricter reading has some implicit support in the legislative history. See, e.g., Warren, 378 B.R. at 647; see also Rivera, 376 B.R. at 386 (voicing concern that retroactive relief from the filing requirement "would render the automatic dismissal provision in § 521(i) meaningless").

This position has a certain superficial appeal. Still, we must caution against trying to stretch a morsel into a meal. The amendments to section 521 are part of an abuse-prevention package. With Congress's core purpose in mind, we are reluctant to read into the statute by implication a new limit on judicial discretion that would encourage rather than discourage bankruptcy abuse. It is safe to say that Congress, in enacting BAPCPA, was not bent on placing additional weapons in the hands of abusive debtors.[7]

In all events, we believe that it is possible to give effect to all of section 521, preserving the bankruptcy court's discretion to forgive compliance with disclosure requirements after the fact while at the same time preserving the authentic value of automatic dismissal. When a party moves under section 521(i)(2) for the entry of an order dismissing an incomplete petition, the court can do one of three things: dismiss the case,

---

[7] By definition, such debtors are unfit for the "good faith" exception in section 521(i)(4). See supra note 2. Moreover, under 11 U.S.C. § 707(a), a chapter 7 debtor has no absolute right to dismiss his petition but must instead show cause. See In re Smith, 507 F.3d 64, 72 (2d Cir. 2007).

decline to dismiss the case if the good-faith exception for payment advices applies, see supra note 2; or determine, in its discretion, that the missing information is not "required under subsection (a)(1)." 11 U.S.C. §521(i)(1). In the last-mentioned event, the court can deny the motion to dismiss. Some courts in "strict" jurisdictions seem to assume that the second and third of these options cover the same ground. That thinking underlies the opinions construing the forty-five-day deadline for automatic dismissal as an implicit temporal limitation upon the court's authority to order otherwise. See, e.g., Spencer, 388 B.R. at 422; Warren, 378 B.R. at 646; Hall, 368 B.R. at 599; Brickey, 363 B.R. at 64-65; Calhoun, 359 B.R. at 740.

We find that mechanical reading unwise. While it may be textually plausible, it fails to harmonize the letter and purpose of the statute. There is another, equally plausible reading — a reading that avoids this vice.

The approach that we endorse recognizes that missing information may or may not be required, in a practical sense, depending upon what is deemed material by the court many months (or even years) after the bankruptcy petition has been filed. This would seem to be a likely reason for Congress to have entrusted the bankruptcy court with discretion to modify disclosure requirements on the fly. Where, as here, a previously hidden asset has more than enough value to cover the entire

universe of creditors' claims, dollar for dollar, dispensing with the disclosure of statements reflecting payment advices and/or monthly net income is both pragmatic and reasonable. Common sense suggests that Congress never intended to strip the bankruptcy court of the flexibility needed to respond intelligently to the emergence of such a circumstance after the forty-five-day filing deadline has expired.

This intuition is reinforced by our certain knowledge that this degree of flexibility existed in the Bankruptcy Code prior to BAPCPA's passage. As we have said, BAPCPA did not expressly curtail this aspect of the bankruptcy court's authority and, given the practical realities, we are reluctant to step in where Congress has elected not to tread. Automatic dismissal may be a new twist, but the importance of the judiciary's ability to assess needs and respond to exigencies free of artificial constraints has not changed. In our view, Congress must have recognized that bankruptcy courts would still need a meaningful opportunity to gauge whether missing information is "required" in a particular case. We conclude, therefore, that when the missing information has become irrelevant or extraneous and the court, in lieu of dismissal on that account, "order[s] otherwise," section 521(i) does not compel dismissal of the case.[8]

---

[8] To be sure, the time line for the entry of an order of automatic dismissal suggests an impatience with delay. When a party in interest requests dismissal and the case is one that falls

On the same reasoning, we also reject the assertion that the exceptions to automatic dismissal contained in section 521(i), see supra note 2, were meant to supplant the bankruptcy court's discretion to order otherwise more than forty-five days after the filing date. Those exceptions apply when the court does not choose to waive the disclosure requirement either ex ante or ex post; they do not apply when the court does so elect. So understood, the exceptions operate within their own statutory ambit and do not cabin the bankruptcy court's discretion in other areas.

Let us be perfectly clear. We do not decide today whether bankruptcy courts possess unfettered discretion to waive the disclosure requirements ex post. Where, however, there is no continuing need for the information or a waiver is needed to prevent automatic dismissal from furthering a debtor's abusive conduct, the court has discretion to take such an action. This case is of that genre.[9]

To sum up, the great divide in section 521 is between information that is required and information that is not. The Act

within section 521(i)(1), "the court shall enter an order of dismissal not later than 5 days after such request." 11 U.S.C. § 521(i)(2). Nothing in our holding today diminishes this mandate.

[9] It would serve no useful purpose for us to attempt to sketch the full range of circumstances that might justify the exercise of this discretion.

allows courts to do the sifting suggested by that divide without rigid adherence to the forty-five-day deadline.

We need go no further. In this case the bankruptcy court, acting with care and restraint, was faithful to the evolving statutory scheme. Its order was, therefore, within the compass of its discretion.

**The judgment of the district court is reversed and the matter is remanded for further proceedings consistent with this opinion**.